BBD TRANSPORTATION COMPANY, INC., Plaintiff/Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY et al., Defendants/Appellees.

CA No. 78–2573.

United States Court of Appeals, Ninth Circuit.

Submitted July 9, 1980.

Decided Sept. 4, 1980.

tion and Kaiser Steel Corporation to depress motor carrier rates in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and the Cartwright Act, California Business & Professions Code §§ 16700–16758. The district court dismissed BBD's complaint as barred by the four-year statute of limitations in section 4B of the Clayton Act, 15 U.S.C. § 15b. We reverse in part.

*FACTS*:

BBD contends that the defendant railroad companies agreed with Kaiser and United States Steel to lower their shipping rates on certain intrastate California routes in exchange for the steel companies' promise to help the railroad companies improve their interstate iron and steel traffic.

BBD argues that the steel companies' ultimate aim was the reduction of motor carrier rates. Under California law, "permit motor carriers" are prohibited from charging rates lower than those charged by railroads, California Public Utilities Code § 3663, and BBD contends that the rail rate reduction, in addition to being illegal in itself as an act of price-fixing, was one step in a broader conspiracy to depress motor carrier rates.

After the California Public Utility Commission granted the railroads' requested rate reduction, the steel companies allegedly engaged in certain unlawful acts that forced motor carriers to reduce their iron and steel rates. BBD's complaint alleges that the steel companies compelled a reduction in motor carrier rates by using their economic power to control the routing of steel shipments and to disrupt the customer relations of uncooperative truckers.

BBD alleges that United States Steel retaliated against it, because it filed a complaint with the California Public Utility Commission challenging the reduced rail rates as unlawful under California's regulatory system and destructive of competition. Kaiser Steel expelled BBD from its mill and refused to route any steel shipments through it. BBD maintains that these were

Eugene C. Thomas Paine, Raymond L. Ocampo, Jr., Hugh L. Holt, Broad, Khourie & Schulz, San Francisco, Cal., for plaintiff/appellant.

Herbert A. Waterman, San Francisco, Cal., Crosby, Heafey, Roach & May, Oakland, Cal., on brief; Robert D. Raven, George G. Weickhardt, San Francisco, Cal., Peter W. Davis, Oakland, Cal., for defendants/appellees.

Before CHOY, ANDERSON and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

BBD Transportation Company, Inc. sued Southern Pacific Transportation Company and five other railroads[1] alleging that they conspired with United States Steel Corpora-

---

1. The defendants in addition to Southern Pacific were Union Pacific Railroad Company, Western Pacific Railroad Company, Burlington Northern, Inc., Denver and Rio Grande Western Railroad Company, and Atchison, Topeka and Santa Fe Railway Company.

predatory uses of the steel companies' economic power intended to further the purposes of the steel companies' conspiracy with the railroads.

DISCUSSION:

The defendant railroads contend that the district court's dismissal should be affirmed because, among other reasons, BBD lacked "standing" to sue the railroads for their allegedly illegal rate reduction. The Supreme Court, in Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), held that a plaintiff, to recover antitrust damages, must prove an injury of the type which antitrust laws were intended to remedy. The defendant, Brunswick, purchased several small bowling alleys that were on the verge of going out of business. The purchases violated section 7 of the Clayton Act because of Brunswick's dominant position in the relevant market. The plaintiff, Pueblo Bowl-O-Mat, Inc., was a competing bowling alley that claimed damages for the profits it lost because Brunswick kept the financially crippled alleys from going out of business.

The Court concluded that the plaintiff was not entitled to recover its lost profits regardless of whether Brunswick's purchase was a Clayton Act violation.

> The damages [the plaintiffs] obtained are designed to provide them with the profits they would have realized had competition been reduced. The antitrust laws, however, were enacted for "the protection of competition, not competitors," Brown Shoe Co. v. United States, 370 U.S. 294, at 320, 82 S.Ct. 1502, at 1521, 8 L.Ed.2d 510. It is inimical to the purposes of these laws to award damages for the type of injury claimed here.

Id. at 488, 97 S.Ct. at 697. The Brunswick Court's limitation on antitrust recoveries has been applied to alleged price-fixing agreements challenged under section 1 of the Sherman Act. Murphy Tugboat Co. v. Crowley, 454 F.Supp. 847, 851–52 (N.D.Cal. 1978).

To the extent BBD alleges that the railroads' rate reduction was actionable without regard to the acts of the steel companies, BBD lacks standing to recover damages. The only direct effect of the railroad rate reduction on BBD was the lowering of the legal floor on motor carrier rates. The railroad companies' acts, therefore, allowed the motor carriers to compete more freely with less external restriction. The principles of Brunswick preclude recovery for a lowering of profits caused by free competition.

BBD does not, however, limit its claim to injury caused by the railroad rate reduction. BBD also contends that the railroads are liable as co-conspirators for injury caused by the allegedly anticompetitive acts of the steel companies. If BBD can prove that the railroads were parties with the steel companies to an overall conspiracy to depress motor carrier rates, then BBD's recovery from the railroads would be based on injuries caused by the steel companies' coercive acts rather than on injuries caused by the removal of a limitation on competition. Injuries caused directly by the allegedly anticompetitive acts of the steel companies are the type which antitrust laws were intended to remedy. Brunswick does not preclude BBD's recovery on the broad conspiracy theory.

The district court dismissed BBD's complaint on the ground that it was barred by the four-year statute of limitations of section 4B of the Clayton Act. The district court found that the railroads committed no act within four years prior to BBD's filing its complaint which started the statute of limitations running again. BBD's complaint alleged that the steel companies' acts in depressing the motor carrier rates were in furtherance of the broad conspiracy and should be imputed to the defendant railroads for purposes of the statute of limitations. The court rejected BBD's contention on the ground that BBD had not alleged the conspiracy with sufficient specificity. We disagree.

The court noted that BBD had not alleged that defendants either knew of or participated in any of the steel companies' acts. The court stated that BBD had failed to allege any "link" between the conspiracy to reduce rail rates and the broader conspir-

acy to reduce motor carrier rates. BBD's complaint described in detail the steel companies' reasons for depressing motor carrier rates. It also explained why reduction of rail rates was a necessary first step.

BBD specifically alleged that "defendants, for the purpose and with the effect of unlawfully depressing motor carrier rates and maintaining said rates at such unlawfully depressed levels, have contracted, combined, and conspired among themselves and with others, including USS and Kaiser, to unreasonably restrain trade . . . ." The allegation that defendants conspired to restrain trade for the purpose of depressing motor carrier rates implicitly includes the allegation that defendants, in conspiring with the steel companies, knew of their ultimate purpose to depress motor carrier rates and to some extent embraced that purpose as their own.

■ To be liable as a co-conspirator for the anticompetitive acts of the steel companies, the railroads need not have known of or participated in those acts themselves. *El Ranco, Inc. v. First National Bank of Nevada*, 406 F.2d 1205, 1216 (9th Cir. 1968), *cert. denied*, 396 U.S. 875, 90 S.Ct. 154, 24 L.Ed.2d 133 (1969). We recognize that a mere statement of a legal conclusion, without allegations of circumstances tending to support it, is insufficient to support an antitrust conspiracy claim, but a complaint's basic purpose is to give a defendant notice of the claim advanced against it. BBD alleged the purpose of the conspiracy and the circumstances surrounding its formation. It was not required to plead its evidence that defendants actually embraced the steel companies' ultimate goal.

■ Defendants maintain that even if BBD's amended complaint sufficiently pled a conspiracy to depress motor carrier rates and the steel companies' acts should there-

fore be imputed to defendants, the claim was nonetheless time-barred since the amended complaint was filed more than four years after the last specified steel company act.[2] The claim stated in the amended complaint, however, "arose out of the conduct, transaction, or occurrence" set forth in the original complaint. Fed.R.Civ.P. 15(c). The amended complaint, therefore, "relates back" to the original which was filed within four years of the last act.

The limited record before us precludes our determination of whether BBD has sufficient evidence of the railroads' involvement in the broader conspiracy to survive a defense motion for summary judgment. Since we reject the district court's conclusion that BBD's complaint failed to sufficiently allege the railroads' involvement in a conspiracy to depress motor carrier rates, we remand for further proceedings on that theory of relief.[3]

Reversed in part, remanded.

---

**2.** The last steel company act specified in the amended complaint was Kaiser's expulsion of BBD from its plant in June, 1973. The amended complaint was filed in November, 1977.

**3.** The remand on the broad conspiracy theory applies to Burlington Northern, Inc. and the Denver and Rio Grande Western Railroad Company as well as the other four defendants. Burlington Northern and the Rio Grande each

submitted a supplemental brief contending that the district court's dismissal should be affirmed as to them even if we rejected the other defendants' contentions. A motion for summary judgment before the district court is the appropriate occasion for considering their arguments that they did not participate in the alleged conspiracy.