WALLACE, Circuit Judge:
 

 Riggs, in his capacity as bankruptcy trustee for John and Gloria Ferguson, brought suit against Government Employees Financial Corporation (GEFCO) for violating the Truth-in-Lending Act (Act), 15 U.S.C. § 1601
 
 et seq.,
 
 in a 1975 loan to the Fergu-sons. The district judge granted Riggs’ motion for summary judgment and awarded $2,000 in damages and $2,500 in attorney’s fees to the bankrupt estate pursuant to 15 U.S.C. § 1640(a). GEFCO appeals, claiming that the district court erred in permitting the bankruptcy trustee to sue for a Truth-in-Lending violation while denying GEFCO’s counterclaim that the award be set off against the debt owed to GEFCO by the Fergusons. GEFCO also contends that the district court erred in granting a separate $1,000 recovery for each of the two debtors involved. We affirm the bankruptcy trustee’s right to sue and the denial of the setoff, but reverse the grant of two $1,000 recoveries.
 

 I.
 

 GEFCO does not contest the district court’s finding of a Truth-in-Lending violation in its loan to the Fergusons, nor does it contest the grant of $2,500 in attorney’s fees. Rather, GEFCO contends that the district judge’s ruling that the Fergusons’ Truth-in-Lending claim was transferable to their bankruptcy trustee is logically inconsistent with his refusal to satisfy the award
 
 *70
 
 by setting it off against the larger debt that the Fergusons owed to GEFCO. To support this contention, GEFCO argues that both the transfer and the setoff rulings depend upon whether the court characterizes the Act recovery provision, 15 U.S.C. § 1640(a),
 
 [1]
 
 as a penalty, or instead as a remedy. If the recovery provision is a penalty, GEFCO contends that the right to sue would not transfer to a bankruptcy trustee, because it would not survive the death of its original owner, and survivability is an essential element of transferability. If the recovery provision is remedial, GEFCO concedes the transferability of the Truth-in-Lending cause of action to the trustee, but contends that any recovery should be set off against the preexisting debt. Thus, whether the Act is penal or remedial, GEF-CO contends that the district court erred by permitting the transfer but denying the setoff. GEFCO asks us to characterize the Act one way or the other, reverse the district court, and direct that the chosen characterization be applied consistently.
 

 GEFCO acknowledges that case law concerning the proper characterization of section 1640 is inconsistent. Some courts, asked to determine the transferability of a Truth-in-Lending claim to a bankruptcy trustee, have concluded that section 1640 is remedial.
 
 E. g., Murphy v. Household Finance Corp.,
 
 560 F.2d 206 (6th Cir. 1977);
 
 Porter v. Household Finance Corp.,
 
 385 F.Supp. 336 (S.D.Ohio 1974).
 
 See also Smith v. Galesburg Crown Finance Corp.,
 
 615 F.2d 407, 414, 415 (7th Cir. Jan. 15, 1980) (concluding that Truth-in-Lending claim survives death of holder because it is remedial). At least one court, faced with the single question whether a Truth-in-Lending award should be set off against a preexisting debt, has characterized section 1640 as penal.
 
 See Newton v. Beneficial Finance Co.,
 
 558 F.2d 731 (5th Cir. 1977). No cases have been called to our attention, and we have found none, in which a court characterized section 1640 while considering both the transferability and setoff questions. Thus, we are faced with an issue of first impression, portions of which have been decided inconsistently by various courts.
 

 Our efforts to resolve this novel question have convinced us that section 1640 is neither wholly remedial nor wholly penal. We have reached the conclusion, as have other courts before us, that “[t]he use of labels such as ‘penal’ or ‘remedial’ is [only] a shorthand way of expressing relevant considerations,”
 
 Derdiarian v. Futterman Corp.,
 
 223 F.Supp. 265, 271 (S.D.N.Y.1963), and that an inquiry as to whether a statute “is penal or remedial seems bound to result in the conclusion that ... it is both.”
 
 Epstein v. Shindler,
 
 200 F.Supp. 836, 837 (S.D.N.Y.1961).
 

 A.
 

 Section 1640 has clear remedial purposes. Congressional hearings that preceded enactment of the Act revealed that the exponential growth of consumer credit following World War II was accompanied by widespread consumer ignorance of the nature and scope of credit transactions.
 
 Mourning v. Family Publications Service, Inc.,
 
 411 U.S. 356, 363, 93 S.Ct. 1652,1658, 36 L.Ed.2d 318 (1973). “Because of the divergent, and at times fraudulent, practices by which consumers were informed of the terms of the credit extended to them, many consumers were prevented from shopping for the best terms available and, at times, were prompt
 
 *71
 
 ed to assume ^ liabilities they could not meet.”
 
 Id.
 
 By passing the Act, Congress sought “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . 15 U.S.C. § 1601. Congress’ primary intent was “to remedy abuses resulting from consumer ignorance of the nature of credit arrangements by requiring disclosures . .”
 
 Smith
 
 v.
 
 Galesburg Crown Finance Corp., supra,
 
 615 F.2d at 414.
 

 The Act provides that upon proof of a Truth-in-Lending violation, the individual consumer may recover actual damages and an amount equal to twice the finance charge of the transaction up to $1,000. 15 U.S.C. § 1640(a). “Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.”
 
 Huntington
 
 v.
 
 Attrill,
 
 146 U.S. 657, 667, 13 S.Ct. 224, 227, 36 L.Ed. 1123 (1892). Indeed, those courts which have characterized the Act as a remedial statute have relied upon the civil damages provision.
 
 E. g., Smith v. Galesburg Crown Finance Corp., supra,
 
 615 F.2d at 415;
 
 Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 210;
 
 New York Credit Men’s Adjustment Bureau v. Bruno-New York, Inc.,
 
 120 F.Supp. 495, 497 (S.D.N.Y.1954). That a portion of such damages is statutorily set rather than being subject to proof like most remedial damages, does not necessarily make the statute penal. The liquidated nature of section 1640(a)(2)(A) damages is consistent with a remedial objective, for when an uninformed consumer loses the opportunity to secure better credit terms elsewhere, actual damages may be difficult to ascertain.
 
 Smith v. Galesburg Crown Finance Corp., supra,
 
 615 F.2d at 415;
 
 Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 210;
 
 Porter v. Household Finance Corp., supra,
 
 385 F.Supp. at 342.
 

 The generally remedial nature of the Act as a whole, as suggested by the statements of congressional purpose and by its damage provisions, has been widely recognized in the courts. It is well established that the Act is to be liberally construed to effectuate its remedial purpose.
 
 Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 210 (and cases cited therein);
 
 Hannon v. Security Nat’l Bank,
 
 537 F.2d 327, 328 (9th Cir. 1976);
 
 Eby v. Reb Realty, Inc.,
 
 495 F.2d 646, 650 (9th Cir. 1974);
 
 Ratner v. Chemical Bank New York Trust Co.,
 
 329 F.Supp. 270, 280 (S.D.N.Y.1971).
 

 B.
 

 Despite these indicators of remedial purpose and nature, the Act’s civil recovery provisions cannot be considered wholly remedial: the Act also furthers significant penal objectives. In
 
 Eby v. Reb Realty, Inc., supra,
 
 495 F.2d 646, we considered the question whether a consumer must elect one of the two “remedy” provisions of the Act when proceeding against a lender. We concluded that, because of various penal characteristics of the Act’s civil recovery provisions, section 1640(a)(2)(A)(i), is not a “remedy” for election of remedy purposes. We stated:
 

 By providing a minimum recovery of $100 regardless of the presence of a finance charge or its
 
 de minimis
 
 amount, Congress indicated that the finance charge was to be no more than a convenient measure for damages and not a remedial trigger upon which liability was to depend. Equally inconsistent with a view of section 1640 as remedial is the recovery limit of $1,000. If the finance charge, for example, should exceed $1,000, civil liability would obviously be inadequate to compensate a debtor. Finally, a defense to section 1640 is that the creditor’s violation of the Act was unintentional. 15 U.S.C. § 1640(c). Since liability is thereby dependent to some degree on culpability, this is another index that the section could not be wholly remedial in character.
 

 Id.
 
 at 651-52. In addition, we observed in
 
 Reb Realty
 
 that the Supreme Court, in
 
 Mourning v. Family Publications Service, Inc., supra,
 
 411 U.S. at 376, 93 S.Ct. at 1664,
 
 *72
 
 had “characterized section 1640’s damage provision as a ‘civil penalty’ the applicability of which depends not on the finance charge levied, but on the failure to make disclosures.”
 
 Id.
 
 at 651. These factors preclude any characterization of section 1640 as wholly remedial.
 

 C.
 

 Thus, an examination of the Act and interpretive case law indicates that it “ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices” by penalizing those who violate its provisions.
 
 Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 211; see
 
 Williams v. Public Finance Corp.,
 
 598 F.2d 349, 355 (5th Cir. 1979);
 
 Porter v. Household Finance Corp., supra,
 
 385 F.Supp. at 342. The civil recovery provisions cannot be characterized as wholly remedial or wholly penal for the purpose of deciding the two distinct questions before us: whether a Truth-in-Lending claim may be transferred to a bankruptcy trustee, and whether the claim may be set off against a preexisting debt. The Supreme Court recognized long ago that statutes such as section 1640(a)(2)(A) can be readily characterized as penal against the violator but remedial as to the victim.
 
 Huntington v. Attrill, supra,
 
 146 U.S. at 667, 13 S.Ct. at 227. Thus, we decline GEF-CO’s invitation to characterize the Act as purely remedial or purely penal. We find that the questions presented can be answered without such characterization.
 

 II.
 

 Whether the Fergusons’ Truth-in-Lending claim was transferable to Riggs, their bankruptcy trustee, depends upon the power granted Riggs by the Bankruptcy Act. Under the relevant provision of the Bankruptcy Act applicable to this case, Riggs had power to assert any “action, which pri- or to the filing of the [bankruptcy] petition [the Ferguson’s] could by any means have transferred . . . .” 11 U.S.C. § 110(a)(5) (1976) (superseded 1978).
 

 GEFCO contends, and Riggs does not disagree, that the transferability of a Truth-in-Lending claim depends upon whether it would survive the death of its original holder.
 
 See, e. g., Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 208. In
 
 Schreiber v. Sharpless,
 
 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884), the Supreme Court held that claims arising under a penal statute do not survive the death of their original holder. Thus, according to GEFCO, if we should find the recovery provisions set forth in section 1640(a)(2)(A) to be penal, claims deriving from these provisions would not be transferable to a bankruptcy trustee.
 

 Though GEFCO’s interpretation of
 
 Schreiber
 
 may be correct,
 
 Schreiber
 
 does not control the result in this case. The Court unquestioningly characterized the copyright cause of action at issue . in
 
 Schreiber
 
 as penal.
 
 Id.
 
 at 80, 3 S.Ct. at 424. We have already concluded that the Act does not readily lend itself to such simple characterization. The Act has both penal and remedial purposes. Indeed, each court which has analyzed the transferability of a Truth-in-Lending claim has distinguished
 
 Schreiber
 
 on the basis of the Act’s remedial characteristics.
 
 Murphy v. Household Finance Corp., supra,
 
 560 F.2d at 208-10;
 
 Porter v. Household Finance Corp., supra,
 
 385 F.Supp. at 339-45.
 
 See also Smith v. Galesburg Crown Finance Corp., supra,
 
 615 F.2d at 413-415. We distinguish
 
 Schreiber
 
 on the same basis.
 

 We conclude that permitting the transfer of Truth-in-Lending claims will fully effectuate the purposes of the Act. Congress intended to secure compliance with the Act by creating a civil recovery incentive for private litigants. The Senate Report stated:
 

 The enforcement of the bill would be accomplished largely through the institution of civil actions authorized under section 7 [15 U.S.C. § 1640] of the bill. Any creditor who fails to disclose the required information would be subject to a civil action with a penalty of twice the finance charge. . . . The committee has not
 
 *73
 
 recommended investigative or enforcement machinery at the Federal level, largely on the assumption that the civil penalty section will secure substantial compliance with the act.
 

 S.Rep.No.90-392, 90th Cong., 1st Sess. 9 (1967). As one court has stated:
 

 The scheme of the statute ... is to create a species of “private attorney general” to participate prominently in enforcement. .
 

 Beyond using the finance charge as such an available and handy reference point, presumably to be replaced in the normal ease by the $100 minimum , or $1,000 maximum, Congress made clear its broader scheme, and broader system of reimbursement, for private enforcement. It invited people like [Riggs], whether they were themselves deceived or not, to sue in the public interest. Following familiar precedents, it encouraged such actions by providing, in addition to the incentive of public service, costs and a reasonable attorney’s fee above the minimum recovery of $100.
 

 Ratner v. Chemical Bank New York Trust Co., supra,
 
 329 F.Supp. at 280-81 (footnote omitted). We have previously recognized this private enforcement mechanism of the Act.
 
 See Hannon v. Security Nat’l Bank, supra,
 
 537 F.2d at 328. Were we to hold that Truth-in-Lending claims are not transferable to bankruptcy trustees, we would significantly weaken this means of procuring compliance with the Act’s disclosure requirements. As GEFCO itself stated in its brief:
 

 [PJermitting the trustee to sue promotes the deterrent purpose of the statute. Being generally more sophisticated as to his legal rights and remedies than the bankrupt, the trustee is more likely to enforce the Act by private suit than the bankrupt. Furthermore, the trustee’s duty to examine proofs of claim and object to the allowance of improper claims (Bankruptcy Rule 306(a)) makes it more likely that the trustee will discover Truth-in-Lending violations and enforce the Act against the offending creditor.
 

 We conclude that the Fergusons’ Truth-in-Lending claim was transferable to Riggs.
 
 [2]
 

 III.
 

 At the time of their bankruptcy, the Fer-gusons owed GEFCO approximately $3,500. GEFCO sought unsuccessfully in the district court to set off the Truth-in-Lending award against the $3,500 debt owed to GEFCO by the Fergusons. GEFCO contends that our conclusion that a Truth-in-Lending claim is transferable necessarily requires us to reverse the district court’s denial of the setoff.
 

 The parties agree that setoff in this case is governed by section 68(a) of the Bankruptcy Act which provided at all relevant times:
 

 In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
 

 11 U.S.C. § 108(a) (1976) (superseded 1978). Despite the seemingly mandatory language of this provision, it is well settled that allowance of a setoff lies within the sound discretion of the trial court.
 
 Cumberland Glass Mfg. Co. v. DeWitt & Co.,
 
 237 U.S. 447, 455, 35 S.Ct. 636, 639, 57 L.Ed. 1042 (1915);
 
 In re Diplomat Electric, Inc.,
 
 499 F.2d 342, 346 (5th Cir. 1974);
 
 Brunswick Corp. v. Clements,
 
 424 F.2d 673, 675 (6th Cir. 1970),
 
 cert. denied,
 
 400 U.S. 1010, 91 S.Ct. 564, 27 L.Ed.2d 627 (1971); 4 Collier on Bankruptcy § 68.02 at 851-52 (1978). We have previously acknowledged the discretionary nature of a district court’s ruling on a motion to set off under section 68(a).
 
 *74
 

 Tucson House Constr. Co. v. Fulford,
 
 378 F.2d 734, 737 (9th Cir. 1967). Therefore, we must review the district court’s denial of GEFCO’s requested setoff by determining whether there was an abuse of discretion.
 

 GEFCO contends that the district court’s denial of the setoff inflicted an overly harsh penalty that goes well beyond the remedial purposes of the Act. Specifically GEFCO argues that the net effect of denying the setoff will be to penalize it by the amount of the award in addition to the $3,500 already lost through the Fergusons’ bankruptcy. To support this theory of district court error, GEFCO cites several of our previous cases which, GEFCO contends, have established that the Act does not require maximum deterrence by draconian sanctions.
 
 See LaGrone v. Johnson,
 
 534 F.2d 1360, 1362 (9th Cir. 1976) (per curiam);
 
 Palmer v. Wilson,
 
 502 F.2d 860, 862 (9th Cir. 1974);
 
 Eby
 
 v.
 
 Reb Realty, Inc., supra,
 
 495 F.2d at 652. Moreover, GEFCO contends that the teaching of
 
 LaGrone
 
 and
 
 Palmer,
 
 that a court should not require a lender to pay section 1640 damages without first requiring the borrower to repay the lender the amount of the loan, requires that we reverse the district court ruling that GEF-CO pay a section 1640 award in addition to losing the amount of its loan through bankruptcy.
 

 Although the policy of avoiding harsh Truth-in-Lending sanctions has great weight in cases where both damages and rescission of the debt are imposed by the Act, we find it inapplicable when the harshness results from events independent of the Truth-in-Lending claim. GEFCO’s loss of the $3,500 lent to the Fergusons resulted from the operation of the Bankruptcy laws, not the Act. It was a bad debt incurred by a lender who chose to lend money at the risk of losing it. Loss of the debt had nothing to do with the Act. Thus, GEFCO cannot point to the $3,500 bad debt when accusing the district court of imposing draconian sanctions inimical to the purposes of the Truth-in-Lending laws.
 

 We conclude that the district judge did not abuse his discretion when, considering the Act, he denied the setoff “in accordance with its terms and to effectuate its purpose.”
 
 [3]
 
 As mentioned above, Congress sought to ensure compliance with the Act by providing an incentive for self-enforcement: actual monetary recovery by the individual borrower-litigant and recovery of his attorney’s fees. Hannon
 
 v. Security Nat’l Bank, supra,
 
 537 F.2d at 328;
 
 In re Dunne,
 
 407 F.Supp. 308, 311 (D.R.I.1976);
 
 Ratner v. Chemical Bank New York Trust Co., supra,
 
 329 F.Supp. at 280-81;
 
 Bostwick v. Cohen,
 
 319 F.Supp. 875, 878 (N.D.Ohio 1970). By allowing lenders to subtract Truth-in-Lending awards from amounts owed them by bankrupt borrowers, the district court would eliminate any incentive for bankruptcy trustees to pursue Truth-in-Lending claims. As already discussed and emphasized by the quotation of GEFCO’s own language, bankruptcy trustees’ pursuit of such claims may well be one of the key factors to enforcement of the Act and effectuation of its deterrent purpose.
 

 Moreover, the setoff would eliminate the punitive effect of the Act for lenders of GEFCO’s position. Such lenders would, fortuitously, suffer a lesser or no penalty
 
 *75
 
 for violation of the Act. In an estate with relatively few or no assets, their primary loss would be that which they had already suffered at the hands of the bankruptcy laws.
 

 Thus, we cannot say that the district judge abused his discretion by denying GEFCO’s request for a setoff. The denial clearly effectuated the deterrent and self-enforcement purposes of the Act. Moreover, imposition of the section 1640 award without the right to setoff merely penalized GEFCO to the extent intended by Congress; it did not impose draconian sanctions as GEFCO asserts.
 

 IV.
 

 Finally, GEFCO contends that the district court erred when it awarded two section 1640 recoveries, one for each of the Fergu-sons. The question whether section 1640 permits only one recovery per transaction, or instead permits each borrower in a transaction to recover the statutory award, has been decided differently by the various circuits. Two circuits have held that the plain language of section 1640 requires recovery on a per-person rather than a per-transaction basis.
 
 See Davis v. United Companies Mortgage & Invest., Inc.,
 
 551 F.2d 971, 972-73 (5th Cir. 1977);
 
 Mirabal v. General Motors Acceptance Corp.,
 
 537 F.2d 871, 881-83 (7th Cir. 1976),
 
 cert. denied,
 
 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978). The Fourth Circuit has held that joint debtors are entitled to only one award.
 
 Powers v. Sims & Levin,
 
 542 F.2d 1216, 1219-20 (4th Cir. 1976).
 

 We have previously agreed with the Fourth Circuit and have held that the joint debtors involved in one credit transaction are entitled to only one section 1640 recovery.
 
 Milhollin v. Ford Motor Credit Co.,
 
 588 F.2d 753, 758 (9th Cir. 1978), rev’d
 
 on other
 
 grounds,-U.S. -, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). At oral argument the parties agreed that
 
 Milhollin
 
 is still the law of this circuit on this issue. We agree. Therefore, we reverse the district court’s award of two section 1640 recoveries, and remand for the imposition of one such award.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART,
 

 [1]
 

 . 15 U.S.C. § 1640(a), the provision under which Riggs recovered damages and attorney’s fees, provides:
 

 Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
 

 (1)any actual damage sustained by such person as a result of the failure;
 

 (2)(A)(i) in the case of an individual action twice the amount of the finance charge in connection with the transaction . . . except that the liability under this subpara-graph shall not be less than $100 nor greater than $1,000; or
 

 (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney’s fee as determined by the court.
 

 [2]
 

 . In addition to our conclusion that the Act is not wholly penal and that its self-enforcement policies would be effectuated by transfer of the Truth-in-Lending claim, GEFCO’s method of pursuing this lawsuit suggests its belief that the claim was properly transferred: by not contesting the district court’s award of $2,500 in attorney’s fees, GEFCO implicitly acknowledges that Riggs’ attorneys rightfully earned their fee in pursuit of a claim that originally belonged to the Fergusons.
 

 [3]
 

 . GEFCO argues that the district court did not exercise any equitable discretion in denying the setoff, but rather dismissed the counterclaim because of its incorrect impression that section 1640(a) provided for a “penalty.” We disagree. The district judge explicitly recognized that set-off rulings are discretionary. At the hearing on the motion for summary judgment, the district judge stated that “this setoff like any setoff is a matter of discretion of the court,” The judge went on to say that his award to Riggs and denial of the setoff was according to the terms of the Act and “to effectuate its purpose.” That the district judge referred to section 1640 as a “penalty” when ruling upon the request for a setoff does not convince us that his ruling was based upon an erroneous legal conclusion. As our discussion indicates,' the Act’s penal characteristics provide a rational basis for the district judge’s exercise of his discretion in denying the setoff. The district judge nowhere stated that he was basing that denial upon the rule, set forth in
 
 McCollum v. Hamilton Nat’l Bank,
 
 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938), that penal actions cannot be set off against preexisting debts. Therefore, we conclude that the district judge did in fact exercise his discretion and did so upon a rational basis.