OPINION OF THE COURT
 

 GIBBONS, Circuit Judge:
 

 The Provident Consumer Discount Company (Provident) appeals from a final order of the district court assessing statutory damages against it for violating the Truth
 
 *929
 
 in Lending Act (the Act), 15 U.S.C. § 1601
 
 et seq.,
 
 and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1
 
 et seq.
 
 We hold that the district court erred in holding that a disclosure statement violated the Act and the Regulation. Thus we reverse and remand for consideration of other contentions.
 

 I.
 

 In June 1979, Robert and Jacqueline Griggs (Griggses) obtained a personal loan from Provident for $2940. At that time they received from Provident a document entitled “Note, Security Agreement and Disclosure Statement” which in paragraph 17-E set forth the extent and nature of Provident’s security interests in plaintiffs’ real and personal property. Soon thereafter, plaintiffs filed a Petition in Bankruptcy. After being discharged from their obligations, they instituted this action, alleging that Provident violated the Act and Regulation Z in three respects. They contended (1) that the description of Provident’s security interest taken in after-acquired property is inaccurate and misleading; (2) that Provident improperly calculated the refund of prepaid interest due on an earlier loan refinanced by the present loan, and (3) that the inclusion in the disclosure statement of a non-existent security interest in insurance proceeds was improper. Provident counterclaimed for a setoff against any recovery of the Griggses’ pre-bankruptcy obligations to it. The district court dismissed Provident’s counterclaim, and granted summary judgment to the Griggses.
 
 [1]
 
 The court held that Provident’s disclosure of its security interests in after-acquired property was inaccurate and misleading to potential borrowers. The remaining contentions were not reached since one violation of the Act is sufficient to establish liability for statutory damages. Having determined liability, the court awarded the Griggses separate recoveries of $1000.00 each under 15 U.S.C. § 1640(a). Provident filed a Notice of Appeal from the order on January 16, 1981.
 
 [2]
 
 We dismissed that appeal, 3 Cir., 672 F.2d 903, because the district court’s order was not appealable under Fed.R.Civ.P. 54. Subsequently, the district court directed the entry of a separate final judgment under Rule 54(b). On November 17, 1981 defendant filed in the district court a Motion for Reconsideration and Motion to Alter, Amend and Vacate Judgment. On November 19, 1981, a Notice of Appeal was filed. On November 23, 1981, the district court dismissed Provident’s motions.
 

 II.
 

 Section 1601 of the Act sets forth the congressional purpose for enacting the Truth in Lending Act:
 

 The Congress finds that economic stability would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this sub-chapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.
 

 15 U.S.C. § 1601 (1976). The Act was passed to prevent the unsophisticated consumer from being misled as to the total cost of financing.
 
 See Mourning v. Family Publications Services, Inc.,
 
 411 U.S. 356, 363-69, 93 S.Ct. 1652, 1657-60, 36 L.Ed.2d 318
 
 *930
 
 (1973). It mandates the disclosure of certain information in financing agreements and enforces that mandate by “a system of strict liability in favor of consumers who have secured financing when [the] standard[s] [are] not met.”
 
 Thomka v. A. Z. Chevrolet,
 
 619 F.2d 246, 248 (3d Cir. 1980); 15 U.S.C. § 1640(a).
 
 See also Ives v. W. T. Grant Co.,
 
 522 F.2d 791 (2d Cir. 1975). A plaintiff thus does not need to show that he was in fact deceived by substandard disclosures.
 
 See Dzadovsky v. Lyons Ford Sales, Inc.,
 
 593 F.2d 538, 539 (3d Cir. 1979)
 
 (per
 
 curiam). Moreover, since the Act provides for statutory damages in addition to actual damages, a plaintiff need not even show actual harm.
 

 The Act obligates “[e]ach creditor ... [to] disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under [the Act].” 15 U.S.C. § 1631. Part of that information is “[a] description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.” 15 U.S.C. § 1639(a)(8). No liability can result, however, from “any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the [Federal Reserve] Board.” 15 U.S.C. § 1640(f).
 

 The Federal Reserve Board has issued Regulation Z, 12 C.F.R. § 226.1
 
 et seq.,
 
 pursuant to its rulemaking powers conferred in Section 1604 of the Act, 15 U.S.C. § 1604 (1976). Regulation Z mandates that “[t]he disclosure [under the Act] ... be made clearly, conspicuously, [and] in meaningful sequence.” 12 C.F.R. 226.6(a), and that “additional information or explanations may be supplied with any disclosure required ..., but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required.” 12 C.F.R. § 226.6(c). The creditor must provide “[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.... If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.” 12 C.F.R. § 226.8(b)(5). Special deference must be given the Board regulations since a determination of what is “meaningful disclosure” under the Act is an empirically achieved balance between incomplete disclosure and informational overload, a task to which the Board is better suited than the courts.
 
 See Ford Motors Credit Co. v. Milhollin,
 
 444 U.S. 555, 568-69, 100 S.Ct. 790, 798-99, 63 L.Ed.2d 22 (1980).
 

 Our task is to determine whether the district court committed an error of law in applying the Act and Regulation Z.
 
 [3]
 
 
 *931
 
 Paragraph 17-E of Provident’s “Note, Security Agreement and Disclosure Statement” provides:
 

 E. SECURITY: Until the Total of Payments and all other obligations of Borrower to Provident, direct, or contingent, joint, several or independent, now or hereafter existing, due or to become due, whether created directly or acquired by assignment or otherwise, have been paid in full and as security therefor, Borrower grants Provident a security interest in the following assets and all cash and non-cash proceeds thereof (“Collateral”):
 

 1. [ ] The following motor vehicle, complete with all attachments, equipment, accessories and additions:
 

 MAKE SERIAL NO. BODY STYLE MODEL YEAR
 

 2. [x] All household goods of every kind now owned or hereafter acquired within ten days of this date by Borrower, located in or about Borrower’s premises set forth above.
 

 3. [x] Real Property (by a Mortgage and Judgment Note of even date): Address of Real Property:
 
 2121 E. Orleans St, Phila., Pa.
 

 4. [x] Other Real Property: The Judgment Note of even date, when recovered or recorded constitutes a lien on all real property owned by Borrower in the County where such judgment is recovered or recorded.
 

 5. [x] Proceeds of insurance required or purchased in accordance with Paragraph F below payable to Lender.
 

 AFTER ACQUIRED REAL AND PERSONAL PROPERTY OF BORROWER WILL BE SUBJECT TO THE SECURITY INTEREST SET FORTH HEREIN AND THE COLLATERAL SECURES FUTURE AND OTHER INDEBTEDNESS OF BORROWER TO PROVIDENT.
 

 The issue is the legal import of the bold faced after acquired property clause at the end of the paragraph.
 
 [4]
 
 The bold faced section is part and parcel of the security disclosure paragraph. It comes immediately at the end of the description of security and specifically indicates that it addresses “the security interest set forth herein,” i.e., in Paragraph 17-E. Whatever the bold faced words might mean if standing alone, they form part of the paragraph and must be interpreted in that context.
 
 [5]
 

 Reading the bold faced section in the context of the entire Paragraph 17-E, the reference to after-acquired personal property is modified by Paragraph 17-E 2 to mean household goods and only those acquired within ten days of the loan transaction. The reference to after-acquired real property is accurate as to Paragraph 17-E 4 since under Pennsylvania law, in the event plaintiffs’ Judgment Note is recorded or recovered upon, all the real property then owned by plaintiffs (including those acquired after the loan issues) in the county where the judgment is entered of record, becomes subject to the lien. 42 Pa.Cons. Stat.Ann. § 4303 (Purdon 1981). The bold faced section has no application to Paragraph 17-E 3 since that paragraph contains no after-acquired provisions but instead describes a well defined mortgage on a well defined property. The bold faced sub-paragraph thus is modified by the substantive provisions preceding it, and a reading of the paragraph as an integral whole indicates no inaccuracies.
 

 The district court also held that, even if accurate, the bold faced section was
 
 *932
 
 confusing and misleading, because “there is no reason -for the additional confusing information to be present.... If the bold print adds nothing to the security interest taken, there is no reason to have it in the form at all.” 503 F.Supp. at 250. We disagree. The bold faced section fulfills a useful function. It signals to the potential customer that after-acquired property will be subject to defendant’s security interest and, thereby, insures that the customer focus on the preceding paragraph to understand the full scope of his commitments. The Board regulations specifically require that “[i]f after-acquired property will be subject to the security interest ..., the fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.” 12 C.F.R. § 226.8(b)(5). This requirement of clear disclosure of “after acquired property security interests” justifies Provident’s use of a bold face warning flagging a customer’s attention to the existence of such security interest.
 

 Thus we hold that the district court erred in determining that defendant violated the Act and Regulation Z in its disclosure of security interests. The district court did not, however, reach plaintiffs’ allegations that the defendant improperly calculated the refund due to them of interest prepaid on the original loan. Neither can we, absent district court factfinding. We must therefore remand for a determination of the Griggses’ remaining grounds for relief.
 

 III.
 

 Since on remand the question may arise of setting off plaintiffs’ pre-bankruptcy obligations to Provident against their recovery, if any, that question should be addressed.
 

 The Act has important penal characteristics.
 
 See Mourning v. Family Publications Service Inc.,
 
 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973);
 
 Riggs v. Government Employees Financial Corp.,
 
 623 F.2d 68 (9th Cir. 1980);
 
 Newton v. Beneficial Finance Company of New Orleans,
 
 558 F.2d 731 (5th Cir. 1977). The Senate Report stated:
 

 The enforcement of the bill would be accomplished largely through the institution of civil actions authorized under section 7 [15 U.S.C. § 1640] of the bill. Any creditor who fails to disclose the required information would be subject to a civil action with a penalty of twice the finance charge.... The committee has not recommended investigative or enforcement machinery at the Federal level, largely on the assumption that the civil penalty section will secure substantial compliance with the act.
 

 S.Rep.No.392, 90th Cong., 1st Sess. 9 (1967). The Report indicates a congressional intent to deter improper disclosure practices by a system of civil liability. The Act allows recovery even when the complainant was not deceived by misdisclosure, and provides for statutory damages
 
 in addition
 
 to actual damages. Thus the Act imposes a civil penalty, the purpose of which is to provide an incentive for private litigants to institute actions and thereby enforce the Act’s provisions.
 

 A setoff of bankruptcy discharged debts owed a creditor would interfere with the penal purpose of the Act.
 
 Newton v. Beneficial Finance Company of New Orleans, supra,
 
 558 F.2d at 732;
 
 see also Riggs v. Government Employees Finance Corp., supra,
 
 623 F.2d at 73-75. If a creditor were allowed a setoff, the deterrent effect of the civil penalty liability would be reduced. A setoff would remove incentives for an obligor to sue under the Act. Moreover, a setoff would be anomalous since the cause of action inures to the plaintiff as a private attorney general. Superficially it may appear unfair to Provident to make it pay statutory damages in addition to the losses incurred as a result of the Griggses’ bankruptcy. The losses due to bankruptcy, however, are a product of Provident’s judgment in making a loan. Bankruptcy is a business
 
 *933
 
 risk which any lender takes. Bankruptcy losses are thus independent from the Act and Provident cannot rely on these losses for relief from the Act’s penalty provisions. Neither can Provident complain that the Griggses receive a windfall by recovering damages under the Act while having their loan discharged. That windfall is provided by Congress in order to stimulate truth in lending suits. We hold, therefore, that there can be no setoff of the bankruptcy discharged debt against any recovery of statutory damages.
 
 Accord Newton v. Beneficial Finance Company of New Orleans,
 
 558 F.2d 731 (5th Cir. 1977); see
 
 Riggs v. Government Employees Financial Corp.,
 
 623 F.2d 68 (9th Cir. 1980).
 
 Cf. McCollum v. Hamilton National Bank,
 
 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819 (1938) (debt discharged by bankruptcy cannot be used to offset a penalty, imposed by federal statute, against national bank for taking usurious interest.).
 

 IV.
 

 The judgment appealed from will be reversed and the case remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The district court opinion is reported. 503 F.Supp. 246 (E.D.Pa.1980).
 

 [2]
 

 . The Griggses urge that this matter is not appealable because Rule 4(a)(4) of the Federal Rules of Appellate Procedure provides that “[a] notice of appeal filed before the disposition of any of the above motions shall have no effect.” Appellant did fail to satisfy Rule 4(a)(4) but though a premature notice of appeal is subject to dismissal, we have generally allowed appellant to proceed unless the appellee can show prejudice resulting from the premature filing of the notice.
 
 Tose v. First Pennsylvania Bank, N.A.,
 
 648 F.2d 879, 882 n.2 (3d Cir.).
 
 cert. denied
 
 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981);
 
 Hodge v. Hodge,
 
 507 F.2d 87, 89 (3d Cir. 1975);
 
 accord Williams v. Town of Okoboji,
 
 599 F.2d 238 (8th Cir. 1979).
 
 See also
 
 9 Moore’s Federal Practice ¶ 204.14 (2d ed. 1982). In our case, the Griggses have shown no prejudice by the premature filing of a notice of appeal.
 

 [3]
 

 . This is not a case where the court was presented with a record containing conflicting evidence in the form of written documents from which it had to draw factual inferences. Were that the case, Rule 52(a) would require us to review the findings under the “clearly erroneous rule.”
 

 “Rule 52 broadly requires that findings of fact not be set aside unless clearly erroneous. It does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a Court of Appeals to accept a district court’s findings unless clearly erroneous. It does not divide facts into categories; in particular, it does not divide findings of fact into those that deal with “ultimate” and those that deal with “subsidiary” facts.... The rule does not apply to conclusions of law ... [nor does it] furnish particular guidance with respect to distinguishing law from fact.”
 

 Pullman-Standard v. Swint,
 
 - U.S. -, -, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). The issue before us is one of drawing a legal conclusion regarding the consequences of a document.
 
 See generally, Borden Co. v. Clearfield Cheese Co.,
 
 369 F.2d 96 (3d Cir. 1966). The district court cannot, by couching a legal conclusion as a finding of fact, prevent appellate review of legal errors.
 
 Cf. Scott Paper Co. v. Scott’s Liquid Gold, Inc.,
 
 589 F.2d 1225 (3d Cir. 1977) (whether trademark acquired secondary meaning outside the paper
 
 *931
 
 goods product line);
 
 Universal Athletic Sales Co. v. Salkeld,
 
 511 F.2d 904 (3d Cir.),
 
 cert. denied,
 
 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (whether defendant’s chart infringes copyrighted chart as a matter of law);
 
 Sears, Roebuck and Co. v. Johnson,
 
 219 F.2d 590 (3d Cir. 1955) (trade name infringement established as a matter of law).
 

 [4]
 

 . The Griggses also claim that Paragraph 17-E 5 is inaccurate and confusing because it refers to non-existent insurance. This argument is without merit. Paragraph 17-E 5 indicates that there is a security interest in insurance required or purchased in accordance with Paragraph F. Paragraph F, in turn, indicates that no insurance was purchased. Paragraph 17-E 5 alone does not show that there is a security interest in insurance proceeds and we, therefore, find no inaccuracy. Moreover we fail to see any source of confusion or obstruction when upon reading 17-E 5 the borrower refers to Paragraph F and finds it completely blank. It would be apparent to even the most unsophisticated borrower that there is no insurance and hence no security interest.
 

 [5]
 

 . We agree with the Griggses that if the bold faced section in conjunction to paragraph 17-E were to disclose more security interests than what defendant actually had, there would be a violation of the Act and regulations. The purpose of the Act is for customers to be able to make informed decisions. This would be adversely affected as much by overstating a lender’s security interests as by understating them.