In re FORMAGGIO MFG., INC., Debtor.

John E. MOORE, Trustee, Plaintiff,

v.

Ralph GRASSO, Defendant.

Bankruptcy No. 79–342.
Adv. No. 800010.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 14, 1982.

Edward J. Bertozzi, Edwards & Angell, Providence, R.I., for trustee.

Stephen Lichatin, II, Tillinghast, Collins & Graham, Providence, R.I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on Count Two of the Trustee's Complaint wherein the Trustee requests: (1) judgment against the Defendant for funds allegedly transferred to Grasso by Formaggio Mfg., Inc., in the amount of $74,506.90 and (2) the subordination of all claims of Ralph Grasso to those of general creditors. The relevant facts are as follows: [1]

In March 1978 the Defendant, Ralph Grasso, undertook the organization of a cheese manufacturing company, borrowed money from his mother and children to purchase commercial real estate for the operation at 75 Greenwich Street, Providence, Rhode Island, and in April 1978, he incorporated Formaggio Manufacturing, Inc.[2]

On advice of the corporation's accountant, on July 1, 1978 an entry was made in the corporate books to reflect an obligation in the amount of $74,506.90 due to Formaggio from Ralph Grasso. It is undisputed that approximately $64,000 of that debt was for the purchase of the Greenwich Street property,[3] and that the $10,000 balance pertained to the purchase of capital stock.

In July 1979, again upon the advice of the accountant, two more bookkeeping adjustments were made which had the effect of reducing the amount Grasso owed the corporation by approximately $50,000. This was accomplished as follows: Ralph Grasso, as president, issued to himself a company check in the amount of $34,084.53 allegedly for past-due wages, and a second Formaggio check in the amount of $15,000 for unpaid rent on the Greenwich Street property. Plaintiff's Exhibit 14. Grasso then endorsed these two checks, deposited them into the corporate checking account, and argues that the effect of that "transaction" was to reduce his liability to the corporation by nearly $50,000.

The Trustee contends that the July 1979 payments from Formaggio (by Grasso) to Grasso for rent and salary were afterthoughts, and are fraudulent and invalid. The Trustee also argues that even if Formaggio was indebted to Grasso for past-due rent and salary, the payment of those debts on September 14, 1979 constitutes a voidable preference. Grasso argues in the alternative: (1) that in July 1979 he was not indebted to Formaggio, (2) that the payment in question was not a "transfer," and (3) that even if there was a transfer, it does not constitute a preference or a fraudulent conveyance.

The threshold issue to be addressed is whether Ralph Grasso was actually indebted to Formaggio. Formaggio's general ledger indicates on a page entitled "Notes Receivable—Ralph Grasso," $74,506.90 as of July 1, 1978. This receivable was reduced to $59,006.90 after a credit of $15,500 on June 30, 1979. Plaintiff's Exhibit 1. The existence of this obligation is supported by Grasso's admission that when he was discussing the liability in question with his accountant, Edward Alger, he understood the meaning of the term "account receivable." Record at 61–62. He also testified that the original balance was reduced by a $15,000 payment he made to the corporation with funds received from the sale of his condominium. Record at 71–72. In light of Ralph Grasso's testimony that he attended "a year or two at a junior college and four years at the University of Massachusetts, with a major in business," Record at 68, I cannot accept his assertion that he unwittingly merely went along with his accountant's bookkeeping suggestions, but never really was indebted to the corporation.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Formaggio Manufacturing, Inc., filed a Chapter 11 petition on October 9, 1979. On December 10, 1979 the case was converted to Chapter 7.

3. It is also undisputed that Formaggio Mfg., Inc., repaid the loan due to Grasso's mother and children, although the property remained in his name, personally. Record at 55–60.

Based on the entire record,[4] including the testimony and demeanor of the Defendant, I find that Ralph Grasso owed $59,000, more or less, to Formaggio as of the end of June 1979, and that he knew it.

■ The next issue is whether the attempted reduction of Grasso's debt to Formaggio by approximately $50,000 is valid as against the Trustee. Ralph Grasso, on behalf of the corporation, issued two company checks to himself. The first, in the amount of approximately $34,000, was listed as an expense to the corporate wage account. The second, for $15,000, was termed "rent expense." The evidence is that Grasso had been paid $150 per week as salary until the July 1979 payment, and that rent had neither been accrued nor paid by Formaggio to Grasso at any time prior to the payment in question. Neither of these alleged obligations was carried on Formaggio's books, and Grasso conceded that the adjustments in question were made in order to reduce his obligation to the company. Record at 66–67. There is no credible evidence to lend genuineness to these payments, and such transparent accounting sleight of hand may not, within the area of a Bankruptcy Court's equitable jurisdiction, enable this insider to reduce his obligation to the Debtor, at the direct expense of creditors, in the particular circumstances of this case.

■ Grasso's second contention is that the reduction of his indebtedness should be considered a setoff and not a transfer by Formaggio to him, thereby defeating the Trustee's argument with respect to fraudulent transfer and/or preference. As noted in the Defendant's brief, setoff is defined as "a counterclaim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action." Black's Law Dictionary 1230 (rev. 5th ed. 1979). Since it has already been determined that Formaggio was not indebted to Grasso, there could be no "counterclaim demand which defendant holds

against plaintiff." *Id.* Although the Code does not specifically define the term setoff, both § 553 and the applicable case law indicate that there must be mutuality of obligation between the debtor and the creditor. 11 U.S.C. § 553; *Seidle v. Turner, (In re 18th Avenue Development Corp.),* 12 B.R. 10 (Bkrtcy.S.D.Fla.1981). Based on the Court's earlier finding that Formaggio was not indebted to Grasso, his argument that the July transfer was a setoff must also be rejected.

Assuming, hypothetically only, that there was an obligation actually due for salary and rent, the Defendant's argument that the payments were setoffs and not transfers should be rejected for still another reason. Although setoffs may be accomplished before the petition is filed, they may be reviewed by the Bankruptcy Court. 4 Collier on Bankruptcy ¶ 553.05(2) (15th ed. 1981). The allowance of a setoff is within the Court's discretion, based on principles of equity. *See Riggs v. Government Employees Financial Corp.,* 623 F.2d 68 (9th Cir. 1980); *Palmer v. Doull Miller Co., Inc.,* 233 F. 309 (S.D.N.Y.1916); *T. & B. General Contracting, Inc. v. Ballenger Corp. (In re T & B General Contracting, Inc.),* 12 B.R. 234 (Bkrtcy.M.D.Fla.1981).[5] An insider, especially one in complete control of the operation and assets of an insolvent corporation, should not be permitted to unilaterally create personal financial benefit to the detriment of creditors. The application of equitable principles to the facts in this proceeding requires that the Defendant's claim of setoff be rejected and that the transaction be treated as a transfer within the meaning of 11 U.S.C. § 101(40).

■ We have also been asked to consider whether the transfer was fraudulent within the meaning of the Bankruptcy Code. 11 U.S.C. § 548 provides in part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor,

---

4. It should be remembered that the obligation which the Defendant now disputes arises out of the purchase of the business premises held in Ralph Grasso's name personally, but paid for by the corporation.

5. Although most case law in this area concerns § 68 of the Bankruptcy Act of 1898, these authorities are still relevant to the setoff provisions of the Bankruptcy Code, 11 U.S.C. § 553.

that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

The checks issued to Grasso were dated September 14, 1979—less than one month prior to October 9, 1979, the filing date. Plaintiff's Exhibit 14. When the transferee is in a position to dominate or control the debtor's disposition of property, courts have held that the transferee's intent to hinder, delay, or defraud creditors may be imputed to the debtor. 4 Collier on Bankruptcy ¶ 548.02 (15th ed. 1981); *Langan v. First Trust & Deposit Co.,* 293 N.Y. 604, 59 N.E.2d 424 (1944); *In re Cushman Bakery,* 526 F.2d 23 (1st Cir. 1975); *Duberstein v. Werner,* 256 F.Supp. 515 (E.D.N.Y.1966). Grasso, as president and sole stockholder of Formaggio, had complete control of the corporation at all times. Based on the entire record, including Grasso's admission that the purpose of the transfer in question was to reduce his indebtedness to Formaggio, I find that the transaction was made with intent to defraud Formaggio's creditors.

■ Alternatively, since the reduction of Grasso's debt to the corporation by approximately $50,000 was not based on any legal obligation from Formaggio to Grasso,[6] the Debtor received less than a reasonably equivalent value in exchange for such transfer. Although Grasso was employed

by Formaggio and owned the business premises, there is no agreement, history or past practice to establish the alleged indebtedness by the corporation to Grasso. The type of forbearance we have here is not unusual in small, closely held corporations. In the early stages of undercapitalized business ventures such as Formaggio, the principals, of necessity, often waive salary, rent and other rights to payment from the corporation during start-up or in hard times. Such waivers are treated as contributions to capital whereby the principals pass up current income in exchange for the possibility of future enhancement of their capital investment. *See generally, Machinery Rental Inc. v. Herpel (In re Multiponics, Inc.),* 622 F.2d 709, 717 (5th Cir. 1980); Detlev F. Vagts, Basic Corporation Law at 138 (1979). Finally, the Debtor was insolvent at the time of the July 1979 transfer. For the year ending June 6, 1979 the books show a negative net worth of $152,599, Plaintiff's Exhibit 5, and the profit and loss statement for the three months ending October 4, 1979 (the date of filing) shows a loss of approximately $75,000. Plaintiff's Exhibit 16. The requirements of 11 U.S.C. § 548(a) have clearly been met under §§ 1, (2)(A), and (B)(i), and the attempted reduction of Grasso's debt to Formaggio constitutes a fraudulent transfer, which, pursuant to § 548(a), may be avoided by the Trustee.

### PREFERENCE

■ The final issue presented by the parties is whether the Trustee may avoid the transfers in question as preferences, *i.e.,* payments by the Debtor to the Defendant, on account of an antecedent debt under 11 U.S.C. § 547.[7]

Assuming, as the Defendant argues, that Formaggio was indebted to Grasso for accrued rent and salary, the July 1979 payments even in that event, constitute a preference and may be avoided by the trustee; *i.e.,* if the July 1979 payments for rent and

---

6. Based upon earlier findings at p. 690 *supra.*

7. § 547. *Preferences.*

　. . . .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

salary were on account of an antecedent debt,[8] then they occurred within 90 days prior to the October 4 filing date. Pursuant to § 547(f), the Debtor is presumed to have been insolvent during the 90 days preceding the filing date, and there is no evidence to rebut said presumption. In fact, based on Formaggio's negative financial position, the July 1979 payments were made at a time when the Debtor was clearly insolvent. Last, but not least, Grasso received more through those payments (100%) than he would have received as a general creditor in this Chapter 7 case.

Additionally, based on the evidence before the Court, all claims of Ralph Grasso against Formaggio are hereby subordinated to the claims of unsecured creditors pursuant to 11 U.S.C. § 510(c) which provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>> (1) Under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest. . . .

Prior to the enactment of § 510 the case law indicated that equitable subordination is appropriate when: (1) the subordinated creditor has engaged in some type of inequitable conduct; (2) such conduct resulted in injury to other creditors or conferred an unfair advantage on the subordinated creditor; (3) equitable subordination is not inconsistent with the provisions of the Bankruptcy Act. *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692 (5th Cir. 1977); *Nicholson v. Core (In re Carolee's Combine, Inc.)*, 3 B.R. 324 (Bkrtcy.N.D.Ga.

1980). Based on the lengthy hearings in this adversary proceeding, I find these three factors present in this case and based on the above enumerated principles of equitable subordination, the authority and discretion conferred on the Court by § 510(c) is exercised.

Based upon the foregoing discussion, findings and conclusions, the prayers in the Trustee's complaint are granted.

Enter judgment accordingly.

(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

8. This possibility is specifically rejected, however, and is only treated here for possible appellate purposes.