Tracy FLOYD, Plaintiff,

v.

SECURITY FINANCE CORPORATION OF NEVADA, Cecilia Holybee, individually, Debra Wilson, individually, Does II—X, inclusive, and Roe Corporations XI—XX, inclusive, Defendants.

No. CV–S–99–1635–PMP RJJ.

United States District Court, D. Nevada.

Dec. 4, 2001.

Craig Friedberg, Las Vegas, NV, for Tracy Floyd, Plaintiff.

Patrick Sheehan, Las Vegas, NV, for Security Finance Corp. of Nevada, Defendant.

### ORDER

PRO, District Judge.

Presently before this Court are two Motions for Summary Judgment. Plaintiff Tracy Floyd ("Plaintiff") filed a Motion for Summary Judgment on Plaintiff's First Claim for Relief (Violation of Truth in Lending Act) (Doc. # 17) on July 5, 2001. In support of Plaintiff's Motion for Partial Summary Judgment, Plaintiff also filed a Separate Statement of Undisputed Facts (Doc. # 18), as well as Exhibits for the Motion for Summary Judgment and the Statement of Undisputed Material Facts (Doc. # 19), on July 5, 2001. Defendants Security Finance Corporation of Nevada, Cecilia Holybee, and Debra Wilson (collectively "Defendants") filed an Opposition (Doc. # 21) and a Countermotion for Summary Judgment (Doc. # 22) on July 30, 2001. Plaintiff filed a Reply (Doc. # 26) and a Motion to Strike Defendants' Countermotion for Summary Judgment, or alternatively, Opposition to Countermotion for Summary Judgment (Doc. # 27) on August 22, 2001. Defendants filed no Reply.

### I. BACKGROUND

On November 5, 1998, Plaintiff entered into a loan transaction with Security Finance Corporation of Nevada ("SFC–N") for $200.00. (Pl.'s Separate Statement of Undisputed Facts in Supp. of her Mot. for Partial Summ. J. ["Pl.'s Undisputed Facts"] at 3.) The loan transaction was secured by Plaintiff's personal property and was to be repaid over a period of five months pursuant to a note and security agreement. (*Id.*) Plaintiff entered a second loan transaction with SFC–N for an additional $200.00 and under the same general terms as the November 1998 loan on January 25, 1999. (*Id.*) After the note and security agreement were signed, Plaintiff received a written copy of the disclosures required by the federal Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"). (Decl. of Tracy Floyd in Supp. of her Mot. for Partial Summ. J. ¶¶ 2–5; Pl.'s Mot. for Summ. J. on Pl.'s First Claim for Relief, Ex. 13, Dep. of Deborah Wilson, pp. 71–74; Pl.'s Mot. for Summ. J. on Pl.'s First Claim for Relief, Ex. 14, Telephone Dep. of Cecilia Holybee Lewis, pp. 53, 54–56).

### II. LEGAL STANDARD

A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion may be made in reliance on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.*

The movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). Thus, in order to preclude a grant of summary judgment, the non-moving party must set forth " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001) (citing *Zenith*

*Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348).

Although the non-moving party has the burden of persuasion, the party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996). That burden is met by showing an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, the non-moving party must go "beyond the pleadings and by its own evidence present specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996)) (quotations omitted).

## III. DISCUSSION

The purpose of the Truth in Lending Act ("TILA") is to promote "the informed use of credit" by assuring "meaningful disclosure of credit terms [to consumers] so that the consumer will be able to . . . avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The Federal Reserve Board has the power to prescribe regulations under TILA, 15 U.S.C. § 1604(a), and the Board has promulgated Regulation Z in accordance with that power. *See* 12 C.F.R. § 226 ("Regulation Z").

Plaintiff's First Claim for Relief alleges that the Defendants violated TILA and Regulation Z. (Pl.'s Compl. ¶¶ 29–30.) Plaintiff argues that the Defendants violated the two statutes because she was not given the disclosures required by TILA[1] in the proper manner. Plaintiff alleges violations of portions of 12 C.F.R. § 226.17. The subsections at issue state:

§ 226.17 General disclosure requirements.

(a) Form of disclosures.

(1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, *in a form that the consumer may keep.* The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 [content of disclosures]. The itemization of the amount financed under § 226.18(c)(1) must be separate from the other disclosures under that section . . . .

.    .    .    .    .

(b) Time of disclosures. The creditor shall make disclosures *before consummation of the transaction.*

12 C.F.R. §§ 226.17(a)-(b) (emphasis added). Plaintiff reads the two sections of the statute together, arguing that she was not given the disclosures "in a form that [she] may keep" prior to "consummation of the transaction."

Defendants make several arguments in their Reply. First, they argue that Plaintiff's Motion for Summary Judgment alleges a claim that was absent from Plaintiff's Complaint. They also argue that no evidence shows that Plaintiff asked to take the TILA disclosures home. Further, they argue that Plaintiff was given the required disclosures, and that, in any event, Plaintiff is barred from relief because of the unclean hands doctrine.[2]

---

**1.** *See* 15 U.S.C. § 1638(a) for a list of the disclosures required to be made by a creditor.

**2.** Defendants also argue that the parent company of SFC–N, Security Finance Corporation in Spartanburg, is not liable because Plaintiff

## A. Notice of the TILA Claim at Issue in this Motion

Defendants argue that the claim that is the subject of this Motion was absent from Plaintiff's Complaint. The main purpose of a complaint is to provide "notice to the defendant of what plaintiff's claim is and the grounds upon which the claim rests." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990) (citing *BBD Transp. Co. v. Southern Pac. Transp. Co.*, 627 F.2d 170 (9th Cir. 1980)). At the same time, "while it is not necessary that plaintiff state sufficient facts to constitute a cause of action, plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Control Data*, 908 F.2d at 466 (citing *Conley*, 355 U.S. at 48, 78 S.Ct. 99).

■ Even though Plaintiff's Complaint did not specifically refer to the disclosure issues raised in Plaintiff's Motion for Summary Judgment—which deals more precisely with the timing and manner of disclosure—Plaintiff's Complaint does allege that Defendants' actions with respect to disclosure violated TILA and Regulation Z. Plaintiff's Complaint alleges that Defendants "divert[ed] Floyd's attention away from the disclosure statements and the disclosure statements issued in conjunction with the consumer credit transactions." (Pl.'s Compl. ¶ 29.) Because Plaintiff's Complaint did mention Defendants' behavior with respect to the required TILA disclosures by alleging that Defendants "divert[ed]" Plaintiff's attention away from the disclosures (Pl.'s Compl. ¶ 29), this Court concludes that Defendants were on notice about Plaintiff's claims with respect to the timing and manner of the TILA disclosures.

## B. TILA and Regulation Z

Plaintiff and Defendants agree that Plaintiff did receive the required TILA disclosures. However, Plaintiff and Defendants disagree with respect to whether or not Defendants fully complied with the requirements of Regulation Z. The parties differ in their interpretations of the statute, and therefore differ in their opinions with respect to Defendants' compliance. Plaintiff argues that sections 226.17(a)(1) and 226.17(b) should be read together as a single requirement related to the timing of a consumer's receipt of the required disclosures. On the other hand, Defendants argue that TILA only requires that the disclosures are clearly and conspicuously supplied to the consumer in a form the consumer may keep, without reference to the timing issue.

There is no issue of material fact with respect to whether Plaintiff received the written disclosures before or after consummation of the two transactions at issue here—all the presented evidence points to the conclusion that Plaintiff received a written copy she could "keep" *after* the note and security agreement were signed. (Decl. of Tracy Floyd in Supp. of her Mot. for Partial Summ. J. ¶¶ 2–5; Pl.'s Mot. for Summ. J. on Pl.'s First Claim for Relief, Ex. 13, Dep. of Deborah Wilson, pp. 71–74; Pl.'s Mot. for Summ. J. on Pl.'s First Claim for Relief, Ex. 14, Telephone Dep. of Cecilia Holybee Lewis, pp. 53, 54–56).

Defendants do not even attempt to assert that Plaintiff received a copy she could "keep" before the transaction was consummated. Instead, Defendants attempt to center attention on the question of whether or not Plaintiff asked to take the financial disclosure form home with

---

has not asserted an alter ego claim. This argument is irrelevant because Security Finance Corporation in Spartanburg is not a named party in the present case.

her. However, the text of Regulation Z mentions nothing about the consumer's responsibility to ask for the disclosures. In fact, to read such an interpretation into Regulation Z would directly conflict with the stated purposes of TILA; TILA clearly puts the onus on the creditor. *See* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ....") *See also Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) ("The Truth in Lending Act has the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers.") (citations omitted); *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–64, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) ("Because of the divergent, and at times fraudulent, practices by which consumers were informed of the terms of the credit extended to them, many consumers were prevented from shopping for the best terms available and, at times, were prompted to assume liabilities they could not meet.... The Truth in Lending Act was designed to remedy the problems which had developed.") (citation omitted).

In determining the proper interpretation of a statute, the text of the statute controls. *U.S. v. One 1997 Toyota Land Cruiser,* 248 F.3d 899, 903 (9th Cir. 2001) ("In construing a statute, we first consider its text. [W]hen the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms.") (internal citations omitted). In addition, "the cardinal principle of statutory construction [requires] that courts must give effect, if possible, to every clause and word of a statute ...." *Williams v. Tay-*

*lor,* 529 U.S. 362, 364, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Here, the text of the statute refers to "disclosures" in both sub-sections. Defendants impliedly argue that § 226.17(a) refers to one set of disclosures—the written disclosures the "consumer may keep"—and that § 226.17(b) refers to another set of disclosures—the disclosures that must be given "before consummation of the transaction." To infer that two separate kinds of "disclosures" are at issue in § 226.17 adds needless complexity to an already complex statute, and such an inference would be contrary to the plain text of the statute. *See One 1997 Toyota Land Cruiser,* 248 F.3d at 903; *Williams,* 529 U.S. at 364, 120 S.Ct. 1495. The section at issue here is titled "General disclosure requirements." 12 C.F.R. § 226.17. To impart slightly different meanings of "disclosure" to different subsections of a section with "disclosure" in the title—the title that necessarily refers to both sub-sections—would confuse the statute for no reason.

The reading based on the text of the statute is bolstered by reference to the stated purpose of TILA and Regulation Z. "Meaningful disclosure" will no doubt be enhanced by providing a consumer a copy of the required disclosures to keep, and presumably to contemplate, prior to consummation of the transaction.

In accordance with the text and purpose of Regulation Z, the statute is best read as requiring that creditors give TILA disclosures to consumers in a written "form that the consumer may keep" prior to "consummation of the transaction." *See Polk v. Crown Auto, Inc.,* 221 F.3d 691, 692 (3d Cir.2000) ("[O]n balance, we believe that the plain meaning of the regulation [is] that written disclosure in the *form* specified in subpart (a) must be provided to the consumer at the *time* specified in subpart (b).") (emphasis in origi-

nal). *See also Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087, 1092 (W.D.Mich.2000) ("[T]he plain language of 12 C.F.R. § 226.17(a)(1), when read together with 12 C.F.R. § 226.17(b), requires delivery of a copy of the required disclosures to a consumer before consummation of the transaction."); *Walters v. First State Bank,* 134 F.Supp.2d 778, 780 (W.D.Va.2001) ("Regulation Z commands that TILA disclosures must be made clearly and conspicuously in writing, in a form that the consumer may keep, and that the disclosures must be made before consummation of the transaction.") (internal citations omitted); *Brugger v. Elmhurst Kia,* 2001 WL 845472 (N.D.Ill.2001) (agreeing with the reasoning and conclusion of the *Polk* court with respect to interpreting § 226.17(a)-(b)).

## C. Unclean Hands Doctrine

Defendants state that even if their behavior is found to be in violation of TILA and Regulation Z, Plaintiff should be barred from relief because of the unclean hands doctrine. Defendants allege that Plaintiff defaulted on the January 1999 loan and is therefore not entitled to relief.

Whether or not Plaintiff actually defaulted on the January 1999 loan is immaterial to the determination here, however. The Ninth Circuit has followed a general trend that interprets TILA to require strict adherence to its directives. *Semar v. Platte Valley Federal Savings and Loan Ass'n,* 791 F.2d 699, 703–04 (9th Cir.1986) ("TILA and Reg[ulation] Z contain detailed disclosure requirements for consumer loans.... Technical or minor violations of TILA or Reg[ulation] Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind."). *See also Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3d Cir.1990) ("A creditor who fails to comply

with TILA in any respect is liable to the consumer ... regardless of the nature of the violation or the creditor's intent.") (citation omitted); *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 482 (5th Cir. 1995) ("The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers ...."). Further, the Ninth Circuit has pointed out that "Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions." *Jackson v. Grant,* 890 F.2d 118, 122 (9th Cir.1989).

Finally, the violation here is not de minimus. The Ninth Circuit has left open the possibility that a creditor's de minimus technical violations may not mandate imposition of liability. *Dixey v. Idaho First Nat'l Bank,* 677 F.2d 749 (9th Cir.1982). In *Dixey,* borrowers brought an action against the Idaho First National Bank for violations of TILA and Regulation Z disclosure requirements. *Id.* at 750. The district court had held for the creditor bank because its "technical violations" of TILA and Regulation Z were de minimus; the Ninth Circuit reversed. *Id.* In reaching its determination that the violations were not de minimus, the Ninth Circuit reasoned that the purpose of TILA and Regulation Z is to protect consumers, and to this end, the "most important disclosures mandated ... are those upon which consumers should compare competing loans, the finance charge and annual percentage rate." *Id.* at 751. The Court stated that "[t]he Bank failed to give required emphasis to these factors." *Id.*

The case at bar is similar to *Dixey.* While the failure of Defendants to give Plaintiff a copy of the disclosures at the proper time may be characterized as "technical," the failure is not "de mini-

mus." [3] As discussed above, the purpose of TILA and Regulation Z is to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a). Requiring a consumer to receive a copy of the disclosures before the deal is done serves to give a consumer time to mull over what may be unfamiliar and confusing terms, including the "finance charge" and "annual percentage rate" which the *Dixey* Court highlighted as of special importance. This time is essential to a consumer's well-informed decision.

Because the Ninth Circuit demands strict adherence to the technical requirements of TILA and Regulation Z where technical violations are not de minimus, the behavior of Plaintiff is irrelevant to a determination of Defendants' liability.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Tracy Floyd's Motion for Summary Judgment on Plaintiff's First Claim for Relief (Doc. # 17) is hereby GRANTED. Judgment shall be entered in favor of Plaintiff Tracy Floyd on Plaintiff's First Claim for Relief.

IT IS FURTHER ORDERED that Plaintiff Tracy Floyd's Motion to Strike Defendants' Countermotion for Summary Judgment (Doc. # 27) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants Security Finance Corporation of Nevada, Cecilia Holybee, and Debra Wilson's Countermotion for Summary Judgment (Doc. # 22) is hereby DENIED.

---

**3.** The *Dixey* court stated that the use of the phrase "total payments of" instead of "total of payments" was an example of a "truly de minimus" violation. *Dixey* at 752 (citing *Glover v. Doe Valley Development Corp.,* 408 F.Supp. 699 (W.D.Ky.1975)).