**In re Chris Michael LUCAS, Debtor.**

**Kathleen McDonald, Chapter 13 Trustee, for Bankruptcy Estate of Chris M. Lucas, Plaintiff,**

**v.**

**Cash N Advance, Inc., etc., Defendant.**

**Bankruptcy No. BK–S–02–21124–VJ. Adversary No. 03–1148.**

United States Bankruptcy Court, D. Nevada.

June 25, 2004.

Christopher P. Burke, Las Vegas, NV, for Plaintiff.

Lenard E. Schwartzer, Las Vegas, NV, for Defendant.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Defendant Cash N Advance, Inc. ("Cash"), a "payday" lender, moves to dismiss the above-captioned adversary proceeding so that the claims asserted therein may be arbitrated as required by the underlying promissory note (the "Note"). Plaintiff Kathleen McDonald, the chapter 13 trustee, (the "Trustee") opposes the motion. She contends that the arbitration provision in the Note is unenforceable under Nevada law. For the reasons stated below, the Court will deny Cash's motion to dismiss.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The above-captioned debtor (the "Debtor") filed a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code on September 30, 2002. According to the Debtor's bankruptcy schedules, the Debtor works as an apprentice-road sprinkler for a fire protection company. Under his chapter 13 plan, which was confirmed on January 14, 2003, the Debtor proposes to pay $200 a month to the Trustee for 36 months.[1]

The Trustee commenced this adversary proceeding by filing a complaint on June 17, 2003 (the "Complaint"). The Complaint alleges that, on or about September 3, 2002, the Debtor obtained a loan from Cash for $140 in a transaction covered by the Truth-in Lending Act; 15 U.S.C. § 1601 et seq. (hereinafter "TILA"). The Complaint alleges that Cash violated TILA by, among other things, failing to make the required disclosures to the Debtor before consummating the transaction.[2]

---

1. An amended plan was confirmed on or about April 28, 2004, providing for the additional payment to the Trustee of the Debtor's 2003 tax refund.

2. The Complaint contains some procedural irregularities. For example, it includes Doe defendants: i.e., defendants presently unknown to the plaintiff but who may be identified later. The Court does not believe that Doe defendants may be sued in federal court. If the Trustee wishes to add additional identifiable defendants at a later date, the Court believes that she will have to move to amend the Complaint to do so. Second, the Complaint purports to sue not just on behalf of the Debtor but on behalf of "all others similarly situated." It is unclear what is meant by this phrase. Class actions are permissible in bankruptcy proceedings. See Fed. R. Bankr. Proc. 7023, making applicable to adversary proceedings Fed. R. Civ. Proc. 23. However, the Trustee has not yet filed a motion to certify a class. See Fed. R. Civ. Proc. 23(c)(1)(A). Some courts have held that a bankruptcy court's jurisdiction over such a class action brought by the debtor or trustee is limited to claims brought on behalf of other bankruptcy debtors in the district; see In re

A copy of the Note is attached to the Complaint.[3] It consists of a single page. The key terms of the Note are set forth in bold, in boxes, at the top of the page. Immediately below these boxes are three paragraphs of text. The middle paragraph has a heading that reads "Arbitration," which is also in bold. This paragraph states as follows:

All disputes of whatever nature in connection with this agreement, including all issues of arbitrability, shall be settled by binding arbitration under the rules and auspices of the Nevada Arbitration Association, or such other arbitration association licensed to do business in Nevada upon which the parties agree. The arbitration decision shall be final and binding and shall not be subject to trial de nova [sic]. Judgment on the arbitration decision may be entered in any court of competent jurisdiction. Unless otherwise requested by both parties, all arbitration proceedings shall take place in Las Vegas, Nevada and shall be presided over by a single arbitrator. The arbitration shall be authorized and empowered to award injunctive and non-monetary relief, and to award punitive damages as provided by Nevada law allowing such damages in court decisions. Statutes of limitation, estoppel, wavier [sic], laches and similar doctrines, whether raised in court or arbitration. "Commencement" occurs on the date a notice of demand for arbitration is served upon the other party. This arbitration provision constitutes a voluntary arbitration agreement under the Nevada Uniform Arbitration Act intend-ed to exempt the parties from mandatory court referred proceedings.

The Complaint also attaches as an exhibit a proof of claim filed by Cash in this bankruptcy case on May 6, 2003, listing an unsecured claim of $165 (the "Proof of Claim"). It asks the Court to sustain the Plaintiff's objection to the Proof of Claim, allowing Cash no distribution from the bankruptcy estate.

## DISCUSSION

Cash filed a motion to dismiss the adversary proceeding on November 24, 2003 or to stay the proceeding pending mandatory arbitration pursuant to the provision in the Note. Cash contends that the proceeding is noncore and that the Court has no right under bankruptcy law to refuse to enforce the arbitration provision. Cash also contends that the arbitration provision is enforceable under Nevada law. The Trustee disagrees with both contentions. Each issue is discussed below.

## A. ENFORCEABILITY OF ARBITRATION PROVISION UNDER BANKRUPTCY LAW

■ As Cash notes, there is a federal policy favoring arbitration, as evidenced by the Federal Arbitration Act. *See* 9 U.S.C. § 1 et seq.; *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Ninth Circuit Bankruptcy Appellate Panel has adopted the emerging majority rule that the bankruptcy court has no discretion to enforce an otherwise enforceable arbitration provision in a noncore proceed-

---

*Cline,* 282 B.R. 686, 693–96 (W.D.Wash. 2002); *In re Porter,* 295 B.R. 529, 540 (Bankr. E.D.Penn.2003); *contra Bank United v. Manley,* 273 B.R. 229 (N.D.Ala.2001) (permitting nationwide class of debtors).

**3.** The Note states that the loan is due on September 17, 2002, that the finance charge is $25 (which must be paid even if the loan is repaid before the due date), and that the annual percentage rate is 383.403 percent.

ing.[4] It has the discretion to do so in a core proceeding, but the federal policy in favor of arbitration must be considered in exercising that discretion. *See In re Gurga*, 176 B.R. 196, 198–200 (9th Cir. BAP 1994); *see also Hays and Co. v. Merrill Lynch*, 885 F.2d 1149, 1152–56 (3rd Cir. 1989); *In re Gandy*, 299 F.3d 489, 495 (5th Cir.2002).

■ Cash contends that the Trustee's TILA claims are noncore because they are based on nonbankruptcy law. This contention is erroneous. The list of core proceedings contained in 28 U.S.C. § 157(b)(2) includes counterclaims to proofs of claim. *See* 28 U.S.C. § 157(b)(2)(C). As noted above, in this adversary proceeding, the Trustee asks the court to disallow the Proof of Claim. Therefore, the Trustee's TILA claims qualify as counterclaims to the Proof of Claim. *See* Fed. R. Bankr. Proc. 3007.[5] As a result, the Court has the discretion to refuse to enforce the arbitration provision in the Note even if it would be enforceable under Nevada law.

■ The more difficult question is how that discretion should be exercised. As noted above, the Supreme Court has made it clear that a court should not refuse to enforce an arbitration provision simply because the claims to be arbitrated are based on a federal statute other than bankruptcy law. *See Gandy*, 299 F.3d at 494, citing *McMahon*, 482 U.S. at 226–27, 107 S.Ct. 2332. Therefore, the fact that the Trustee's claims are based on TILA is not

sufficient grounds to refuse to enforce the arbitration provision in the Note.

Moreover, while, as noted above, as a counterclaim to the Proof of Claim, this proceeding qualifies as a core proceeding, the Proof of Claim is for a nominal amount. As a result, refusing to enforce the arbitration provision solely because of its relationship to the Proof of Claim would be to permit the "tail to wag the dog." The Court concludes that, under these circumstances, the interests of the bankruptcy case do not justify refusing to enforce the arbitration provision. Therefore, the enforceability of the arbitration provision will be governed primarily by Nevada law.

## B. ENFORCEABILITY OF ARBITRATION CLAUSE UNDER NEVADA LAW

■ The Trustee also contends that the motion to dismiss should be denied because the arbitration provision is unenforceable under Nevada law. She contends that the arbitration provision is an unconscionable contract of adhesion that would not be enforced by a Nevada court against a nonbankrupt debtor. The Court agrees.

The Nevada Supreme Court has addressed this issue in two fairly recent cases: i.e., *Burch v. Second Judicial District Court*, 118 Nev. 438, 49 P.3d 647 (2002) and *Obstetrics and Gynecologists v. Pepper*, 101 Nev. 105, 693 P.2d 1259, 1260 (1985). In *Pepper*, the Supreme Court

---

**4.** The bankruptcy court has jurisdiction over both core and noncore proceedings. *See* 28 U.S.C. § 1334(b). However, it may only issue final orders and judgments in core proceedings. *See* 28 U.S.C. § 157(b)(1), (c)(1). A non-exhaustive list of core proceedings is set forth in 28 U.S.C. § 157(b)(2). They illustrate the principle that core proceedings are those proceedings central to the function of a bankruptcy case. *In re Yochum*, 89 F.3d 661, 669–70.

**5.** Moreover, the Proof of Claim was filed before the filing of this action. Therefore, this case is distinguishable from *In re Castlerock Properties*, 781 F.2d 159, 161–63 (9th Cir. 1986) (counterclaims were not core proceedings where creditor's proof of claim was filed after debtor's claims).

affirmed the lower court's denial of a motion to stay, pending arbitration, a patient's negligence action against a medical clinic. The patient had been required to sign an arbitration agreement as a condition of receiving treatment. The trial court had found the arbitration agreement to be an adhesion contract: i.e., "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Pepper*, 101 Nev. at 107, 693 P.2d at 1260.

The *Pepper* court noted that an adhesion contract is enforceable under Nevada law only if it falls "within the reasonable expectations of the weaker or 'adhering' party and is not unduly oppressive." However, it will not be enforced against the weaker party if it contains a provision limiting the duties or liabilities of the stronger party unless the weaker party received "plain and clear notification" of the terms of the agreement and gave an "understanding consent." *Pepper*, 101 Nev. at 107–08, 693 P.2d at 1260–61. Moreover, the *Pepper* court held, as the party seeking to enforce the adhesion contract against the weaker party, the clinic had the burden of proving that the contract was enforceable. The *Pepper* court concluded that the record supported the trial court's conclusion that the clinic did not meet this burden. *Pepper*, 101 Nev. at 107, 693 P.2d at 1260.[6]

In *Burch*, the Supreme Court granted a writ of mandamus, ordering the trial court to vacate its order compelling arbitration of a breach of warranty dispute by the purchasers of a new home against the builder/seller. The *Burch* court noted that, generally, to be unenforceable, a contract must be both procedurally and substantively unconscionable. *Burch*, 49 P.3d at 650. It concluded that the record established both prongs of this test as a matter of law. As a result, the trial court had erred in compelling arbitration. *Burch*, 49 P.3d at 651.

The *Burch* court found that, in particular, the home warranty contract was procedurally unconscionable. The purchasers were asked to sign a one-page application for enrollment in a home buyers warranty four months after the sale escrow closed. The application made reference to an arbitration provision contained on the sixth page of a thirty-one page booklet. The *Burch* court concluded that the purchasers did not have a "meaningful opportunity to decide if they wanted to agree to the ... [warranty agreement,] including its arbitration provision." *Burch*, 49 P.3d at 650.

The *Burch* court noted that, because the procedural unconscionability was so great, less evidence of substantive unconscionability was required. However, it also found that the arbitration clause was substantively unconscionable because it granted the builder/seller's insurer "the unilateral and exclusive right to decide the rules that govern the arbitration and to select the arbitrators." *Burch*, 49 P.3d at 650.

Under the principles established by these two cases, the Court concludes that Cash's motion to dismiss must be denied.

---

**6.** Both parties relied on affidavits. The plaintiff stated in her affidavit that she did not remember signing the agreement or having it explained to her. All the affidavit of the clinic's receptionist stated was that it was the clinic's general policy to tell the patient that any questions concerning the agreement would be answered. The *Pepper* court concluded that this did not satisfy the requirement of establishing the consumer's "knowing consent" to the arbitration agreement.

The Note is clearly a pre-printed form that was offered the Debtor, a consumer, on a "take it or leave it" basis. Thus, the Note is a contract of adhesion. Furthermore, it limits the Debtor's rights in several ways. For example, it selects the arbitrator. It also imposes costs and potential liability on the Debtor to which he would not be subject in a court proceeding. As the Trustee points out, in a court proceeding, the only cost the Debtor would necessarily incur would be a filing fee. In an arbitration, someone would have to pay the arbitrator's fee. The Note does not provide that Cash will bear that cost.

Moreover, as the Trustee also notes, when a consumer brings a TILA claim, if the claim is successful, the consumer can recover his costs from the lender. However, if the claim is unsuccessful, the consumer is not required to pay the lender's costs. *See Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir.1995) (citing 15 U.S.C. § 2805(d)(1)(C)). The arbitration provision in the Note does not incorporate this protection. As a result, according to the Trustee, the cost and potential liability of arbitration creates a functional bar to a consumer's litigating a claim under TILA.

As a result, because the Note is an adhesion contract that limits the Debtor's rights, Cash has the burden of establishing that the Debtor received "plain and clear notification" of the arbitration provision and gave his "understanding consent" to it. Based on *Pepper*, the Court concludes that it is not sufficient to show that the provision was clearly visible in a single page document signed by the Debtor. As in *Pepper*, no evidence was provided that the significance of the arbitration provision was explained to the Debtor before he signed the Note.[7] Thus, Cash's motion to dismiss must be denied.

## CONCLUSION

The claims asserted by the Trustee in this proceeding are core proceedings under 28 U.S.C. § 157(b)(2)(C) (counterclaims to proof of claim). Thus, the Court has the discretion under bankruptcy law to refuse to enforce to arbitration provision. However, under these circumstances, since the issues do not depend on bankruptcy law and no showing has been made that the needs of the case require a trial of the claims in the bankruptcy court, the Court declines to exercise its discretion in this fashion.

However, the Court concludes that Cash has failed to meet its burden of proving that the arbitration provision in the Note is enforceable under Nevada law. The provision is clearly a contract of adhesion: i.e., the Debtor is a consumer and was offered the Note in its present form on a "take it or leave it basis." The arbitration provision limits the Debtor's rights. Cash failed to meet its burden of proving that the Debtor received a "plain and clear notification" of the provision before signing the Note and that, by signing the Note, the Debtor gave his "understanding consent" to arbitrate any claims under the Note.

As requested by counsel at the hearing on the motion, the effect of the order will

---

**7.** At the initial hearing, neither party cited either *Burch* or *Pepper*. The Court was unfamiliar with Nevada law on this issue at that time and erroneously assumed that it was the Trustee's burden to prove that the arbitration provision of the Note was unenforceable. As a result, the Trustee presented evidence showing that, based on her counsel's informal survey, at least 80 percent of the loan agreements offered by "payday" lenders in Las Vegas contain arbitration provisions. However, Cash presented no evidence concerning the circumstances under which the Note was executed.

be stayed for 30 days to give Cash an opportunity to file a notice of appeal.