In re Thomas R. BOGANSKI, Debtor.

Rick A. Yarnall, (Successor) Chapter 13 Trustee, Appellant,

v.

Four Aces Emporium, Inc., Appellee.

BAP No. NV–04–1148–BSBu.
Bankruptcy No. S–02–20456–VJ.
Adversary No. 03–1200–VJ.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 21, 2004.

Filed Jan. 14, 2005.

Ordered Published March 3, 2005.

---

Christopher P. Burke, Las Vegas, NV, for Kathleen McDonald, Ch. 13 Trustee.

Steven B. Glade, Las Vegas, NV, for Four Aces Emporium, Inc.

Before BRANDT, SMITH and BUFFORD,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Several weeks before filing for relief under chapter 13 of the Bankruptcy Code, 11 U.S.C., debtor borrowed $500 from a payday loan business. The lender's employee manually adjusted the term of the loan agreement but neglected to adjust the annual percentage rate ("APR") accordingly. The initial chapter 13 trustee, Kathleen McDonald[2] ("trustee") filed a proof of claim for the lender and then filed an adversary proceeding for violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA").[3] After trial, the bankruptcy court dismissed the complaint, accepting the lender's defense of bona fide error. Trustee timely appealed. We REVERSE and REMAND. We also DENY appellee's motion to dismiss.

## I. FACTS

The facts are largely undisputed. Debtor Thomas Boganski filed a petition under the Bankruptcy Code, 11 U.S.C. chapter 13, on 12 September 2002. His personal property schedule listed a possible TILA action of "unknown" value, which arose from a consumer loan between debtor and appellee Four Aces Emporium, Inc., a Nevada corporation operating in Las Vegas. On 2 August 2002, Boganski had applied for and obtained a $500 payday loan. The briefs are in accord that the original printout for the loan was set for a two-week term, but no such document is in the record on appeal. Boganski apparently requested the term be extended to one month, and Four Aces' employee Martin May reprinted a form consumer loan agreement with the later due date from the company's computer, reflecting a $50 finance charge and an APR of 121.67%. The printed loan terms were thus:

| | |
|---|---|
| Loan date | 8/2/02 |
| Payment due | 9/1/02 [i.e., a one-month term] |
| Amount financed | $500 |
| Finance charge | $50 |
| Total payments | $550 |
| APR | 121.67% |

The APR was correctly calculated for a one-month term loan with a 10% finance charge.

But Four Aces' finance charge for a one-month loan is 20% ($100), not 10% ($50). As the finance charge did not correspond to a one-month loan, May handwrote interlineations, making the terms disclosed to Boganski:

---

1. Hon. Samuel L. Bufford, United States Bankruptcy Judge for the Central District of California, sitting by designation.

2. Kathleen MacDonald, aka Kathleen Leavitt, was initially appointed trustee, but the case was transferred to Rick A. Yarnall on 1 October 2004. Yarnall automatically succeeds as Appellant herein. *See* Federal Rules of Bankruptcy Procedure 2012(b); *In re Searles*, 317 B.R. 368, 375–376 (9th Cir. BAP 2004). We have amended the caption.

3. Absent contrary indication, all section references are to the TILA, 15 U.S.C. "N.R.S." references are to the Nevada Revised Statutes.

| Loan date | 8/2/02 |
|---|---|
| Date due | 9/1/02 |
| Amount financed | $500 |
| Finance charge | $100 [handwritten change] |
| Total payments | $600 [handwritten change] |
| APR | 121.67% |

As a result, the APR is improperly calculated on the agreement which Boganski signed, as it was not corrected for the increase in the contractual finance charge from 10 to 20% monthly. The trustee alleges, and Four Aces concedes, that the APR should have been 243.33%.

Debtor did not repay any part of the loan before filing his chapter 13 petition on 12 September 2002, but that is not relevant to the determination of liability under the TILA. *Floyd v. Security Finance Corp. of Nevada,* 181 F.Supp.2d 1137, 1142 (D.Nev.2001). Nor did Boganski schedule the debt when he filed his chapter 13 petition.

Four Aces filed no proof of claim, but the trustee's attorney did on its behalf, as 11 U.S.C. § 501(c) and Rule 3004 of the Federal Rules of Bankruptcy Procedure permit. The claim was an unsecured non-priority claim of $600.70, approximately the principal plus the finance charge. Thereafter the trustee filed a complaint objecting to the claim and alleging multiple violations of TILA by Four Aces: failure to make proper disclosure (§ 1638(b)), finance charge disclosure (§ 1638(a)(3)), and misstated APR (§ 1606), and violations of Regulation Z, 12 C.F.R. § 226.17(b) (disclosures to be made before credit extended). Also alleged were violations of Nevada's state disclosure law, N.R.S. 604.164. The trustee sought judgment for statutory TILA damages (twice the finance charge of $100), actual damages, and attorney fees and costs.

At trial, the only issue was Four Aces' bona fide error defense under § 1640(c). Four Aces did not seek to enforce Boganski's obligation.

Yale Bock, Four Aces' owner and executive, testified about employee training, operations, and the use of payday loan software. Four Aces' answer to interrogatory no. 15, admitted into evidence as trial exhibit 4, outlines the procedures Four Aces adopted to avoid errors. Bock admitted that Four Aces regularly extends loans, and had entered into 1500–2000 loans in a 12–14 month period—about 150 per month. He testified the debtor's loan was the only one on which they had received a complaint, that May simply "did not change the interest rate from 10 percent to 20 percent."

Bock also indicated that immediately after this incident, Four Aces had changed its procedures: it now uses only preprinted forms, so the APR is pre-calculated, and no data entry is required. May testified about how the transaction with Boganski took place, and that he had overlooked correction of the APR, which he characterized as an oversight.

Concluding that Four Aces had established its bona fide error defense, the bankruptcy court prepared and entered written findings: first, that Four Aces admitted its error; second, that the error was a result of May's oversight in neglecting to recalculate the APR to correspond to the interest rate and term; and third, Four Aces had adequate procedures, supervision, and employee training on payday loan software to maintain compliance with TILA. The bankruptcy court made no findings regarding the timing of the TILA disclosure or the state cause of action. The bankruptcy court entered judgment dismissing the complaint with prejudice and without an award of fees to either side. The trustee timely appealed. After argument, Four Aces moved to dismiss; we have considered both the motion and trustee's response.

## II. JURISDICTION

█ The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O); *In re Lucas,* 312 B.R. 407, 410 (Bankr.D.Nev.2004) (TILA adversary proceeding brought by trustee is a core proceeding). We do under 28 U.S.C. § 158(c).

## III. ISSUE

Whether the bankruptcy court clearly erred in finding that Four Aces established its defense of bona fide error.

## IV. STANDARD OF REVIEW

█ We review a finding of fact for clear error. *In re Jan Weilert RV, Inc.,* 315 F.3d 1192, 1196 (9th Cir.2003), *opinion amended,* 326 F.3d 1028 (9th Cir.2003); Rule 8013. A factual finding is clearly erroneous if, after reviewing the record, we have a firm and definite conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## V. DISCUSSION

A. *Procedure*

That Four Aces did not file a proof of claim, and the trustee's attorney did on its behalf, raises no issue. With or without the proof of claim, § 541 of the Bankruptcy Code brings Boganski's TILA cause of action into the estate. 11 U.S.C. § 541. In any event, Four Aces does not challenge the trustee's right on behalf of the estate to pursue this cause of action. *See Riggs v. Gov't Emp. Fin. Corp.,* 623 F.2d 68, 73 (9th Cir.1980) (under the Bankruptcy Act, transfer of TILA claims to trustee permissible).

B. *TILA Violations*

 1. *Inaccurate Disclosure of the Actual APR*

The actual APR for Boganski's loan was 243.33%, while the stated APR was 121.67%, which Four Aces conceded violated TILA.

█ TILA is a strict liability statute, and the Federal Reserve Board's implementing Truth in Lending Regulations (Regulation Z), 12 C.F.R. §§ 226 et seq., contain several disclosure requirements for consumer loans. Generally, the law requires disclosure of the finance charge and the finance charge expressed as an annual percentage rate. 15 U.S.C. § 1638(a)(3) and (4). Creditors are liable for even technical violations of TILA. *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989). Under TILA and Regulation Z, APR disclosure is considered accurate if it is within 1/8 of 1% up or down. *In re Ramsey,* 176 B.R. 183, 188 (9th Cir. BAP 1994); *see also* Clontz & Pannabecker, 1 *Truth–In–Lending Manual,* P. 5.01[9] at 5–43 (2000).

█ The purpose of TILA is to prevent ordinary consumers from being deceived about how much interest they are being charged, and "should be liberally construed to protect borrowers." *Ramsey,* 176 B.R. at 187 (citation omitted); *see also Floyd,* 181 F.Supp.2d at 1139. However, a lender may defend on the grounds that the violation resulted from bona fide error:

> A creditor ... may not be held liable in any action brought under this section ... if the creditor shows ... by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.* Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and program[m]ing, and printing errors....

15 U.S.C. § 1640(c) (emphasis added).

██ The burden of proving error-preventing procedures is on the lender raising

the defense of bona fide error. *Teel v. Thorp Credit Inc. of Illinois*, 609 F.2d 1268, 1270 (7th Cir.1979); Rohner and Miller, eds., *Truth in Lending*, § 12.5[2], and n. 269 (2000). And the defense applies in a very narrow range of fact situations; *Foundation Plan, Inc. v. Breaux*, 345 So.2d 955, 958 (La.App.1977) (whether TILA error was bona fide depends on particular facts of the case); *Mitchell v. Indus. Credit Corp.*, 898 F.Supp. 1518, 1531–32 (N.D.Ala.1995) (court granted summary judgment to creditor on bona fide error defense where creditor made single isolated mistake). *See also* James Lockhart, Annotation, *What Constitutes Truth in Lending Act Violation Which "Was Not Intentional and Resulted from Bona Fide Error Notwithstanding Maintenance of Procedures Reasonably Adopted to Avoid Any Such Error" Within Meaning of § 130(c) of Act (15 U.S.C.A. § 1640(c))*, 153 A.L.R. Fed. 193, 1999 WL 181322 (1999).

■ The bankruptcy court's finding of bona fide error was clearly erroneous. First, Four Aces' explanation as to how and why the documents reflected the mistaken APR indicates that the error resulted from its failure to follow its own prescribed protocol: Bock testified that May "should have torn it up and started again." Instead of electronically recalculating the figures, as he should have, May manually modified the form. Trial Transcript at 16.

That initial error was later compounded: Bock says he reviewed the loan documents the day after the loan was funded and caught the error, Trial Transcript at 27, but he did nothing to cure the problem. Nor is there any explanation of how such a glaring error could be missed by even the most cursory check: while the amount

loaned and the term were unchanged in the marked-up document in the record on appeal, the finance charge was doubled, but the APR was not.[4]

Four Aces made no showing that it had a procedure reasonably adapted to prevent such an error, which could have been as simple as Bock (or anyone) inputting the amount, term, and finance charge into the computer and comparing the APR with the agreement. Nor is it clear how either of Four Aces' loan programs (finance charge of 10 percent for two weeks, or 20 percent for a month) could *ever* yield an APR below 240%, or how someone with a B.A. in Economics and an M.B.A., Trial Transcript at 11, could overlook the error.

Four Aces cannot rely on § 1640(b), which provides that there is no liability if the creditor corrects the error within 60 days after discovery and makes the appropriate adjustments in the APR or finance charge. There is no evidence Four Aces ever took any action to rectify its error.

We conclude that the finding that Four Aces had established the bona fide error defense was clearly erroneous.

### 2. Timing of Disclosure

■ Disclosures to the borrower must be made before credit is extended. *Polk v. Crown Auto, Inc.*, 221 F.3d 691, 692 (4th Cir.2000) (noting that, under TILA, a creditor must make disclosures to the borrower before consummation of the transaction).

Because we reverse on other grounds, we need not remand for determination of this cause of action.

### C. State Cause of Action

Nevada law provides that a "registrant, before deferring a deposit, shall provide

---

**4.** Again, the parties concede the original term input was a two-week loan, but there is no such document in our excerpts of record. In any case, the only document which is actually relevant to our review under the TILA is the agreement signed by Four Aces and Boganski.

each borrower with a written agreement .. which contains ...: (3)[d]isclosures required for a similar transaction by the federal Truth in Lending Act[.]" N.R.S. § 604.164.

The trustee's pretrial statement cited the Nevada statute but does not argue or even explain it, and does not mention damages permissible under this statute, nor did the bankruptcy court enter a finding or conclusion on this cause of action.

Trustee admits in her reply brief that "there are no published decisions in Nevada regarding T.I.L.A.'s interaction with N.R.S. § 604, it is unknown how this provision is to be construed," and has not cited any Nevada case which establishes that this provision creates a private cause of action. Neither *Jump v. ACP Enterprises, Inc.,* 224 F.Supp.2d 1216 (N.D.Ind. 2002) nor *Hemauer v. ITT Financial Services,* 751 F.Supp. 1241 (W.D.Ky.1990), cited by trustee, interprets the Nevada statute. In *Jump,* plaintiffs sued the lender under the TILA and the Indiana Uniform Consumer Credit Code which, like the Nevada statute, incorporates by reference the TILA disclosure requirements but also provides for its *own* penalty provisions, at Ind.Code § 24–4.5–5–203. The trustee has pointed to no similar legislative provisions in Nevada.

Since we reverse on other grounds, we need not now address this cause of action.

### D. Statutory and Actual Damages and Attorney's Fees

 Section 1640(a)(2)(A) allows twice the finance charge as statutory damages, here $200. The trustee also sought actual damages under § 1640(a)(1), which states:

[A]ny creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to ... any actual damage sustained by such person as a result of the failure[.]

To support actual damages for a TILA violation, the borrower (here the estate) must establish detrimental reliance. *In re Smith,* 289 F.3d 1155, 1156–57 (9th Cir. 2002). *See also Rucker v. Sheehy Alexandria, Inc.,* 228 F.Supp.2d 711, 719–20 (E.D.Va.2002), *reconsideration denied,* 244 F.Supp.2d 618 (E.D.Va.2003) (TILA consumer must show that she read the TILA disclosure statement, understood charges and, had they been accurate, would have sought a lower price). As there is no evidence Boganski would have rejected that loan had he been advised of the actual APR, there is no basis for an actual damages award.

 Nevertheless, the trustee is also statutorily entitled to a reasonable attorney's fee and costs, § 1640(a)(3); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 706–707 (9th Cir.1986) (creditor liable for reasonable attorney's fee when borrower obtains rescission under TILA; reasonableness based on factors adopted by Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)).

### E. Appellee's Motion to Dismiss

 The trustee filed the claim (possibly late) on Four Aces' behalf, then objected to it in the adversary proceeding (Third Cause of Action); it was not addressed at trial, and nothing in the record reflects any ruling on the objection. Since we reverse the order dismissing the adversary proceeding, the claims objection is again before the bankruptcy court for determination.

The basis for Four Aces' post-hearing Motion to Dismiss was that the trustee made a partial plan distribution to Four Aces from Boganski's chapter 13 estate. It argues, citing *Jacobsen, Morrin & Rob-*

bins Construction Co. v. St. Joseph High School Board of Financial Trustees, 794 P.2d 505 (Utah App.1990), that the partial payment of its claim constitutes an admission that the claim is allowable and that satisfaction of a judgment establishes a waiver of this appeal. *Jacobsen* is not helpful, and is distinguishable on several grounds, including that the trustee here made a partial chapter 13 plan distribution, which is not the same as a satisfaction of a judgment.

Citing *Riggs,* 623 F.2d at 74, trustee argues the motion to dismiss should be denied because a TILA award cannot be offset against a creditor's claim. This is inaccurate: in *Riggs,* the Circuit held that the bankruptcy court has *discretion* to allow a setoff. *Id.* In any case, *Riggs* is inapplicable, because Four Aces is arguing waiver of appeal rights, not asserting an offset.

While there may be some merit to Four Aces' point about inconsistency of the trustees' conduct, the TILA action is distinct from the allowance of the claim. Their separate nature is reinforced by the principle that, for purposes of the compulsory counterclaim analysis of FRCP 13(a), TILA claims do not arise out of the same transaction or occurrence. *Hart v. Clayton–Parker,* 869 F.Supp. 774, 777 (D.Ariz. 1994) ("the sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document, .. [and] application of the logical relationship test reveals that this connection is so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any·of the advantages envisioned in Rule 13(a)", quoting *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir. 1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981)).

We see no reason why this plan distribution (which the trustee's reply to the motion indicates was inadvertent) provides grounds to dismiss a TILA appeal so long as we can fashion effective relief, which we clearly can. Goelz & Watts, *Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice* 6:318 (The Rutter Group 2004); *U.S. for Use of Morgan & Son Earth Moving, Inc. v. Timberland Paving & Const. Co.,* 745 F.2d 595, 598 (9th Cir.1984)(Defendant paid the judgment but thereafter timely appealed; held, appeal was not moot because "[t]he usual rule in federal courts is that satisfaction of judgment does not foreclose appeal").

We will deny the motion to dismiss.

## VI. CONCLUSION

The bankruptcy court clearly erred in finding bona fide error. We REVERSE the bankruptcy court's order dismissing the trustee's complaint, and REMAND for entry of judgment for statutory damages and adjudication of the trustee's attorney's fees and costs on the TILA action, and for determination of the trustees' objection to the claim and the state cause of action. We will also enter an order denying the motion to dismiss.