**In re Vincent Edwards BRANCH, Re'Jane Gabriella Branch, Debtors.**

**No. 05–35314 EEB.**

United States Bankruptcy Court, D. Colorado.

June 12, 2006.

Vincent Edward Branch, Aurora, CO, pro se.

Re'Jane Gabriella Branch, Aurora, CO, pro se.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the letter filed by the Debtors, which the Court deems to be a Motion to Reconsider the Order granting relief from the automatic stay to Dresser IVI Employees Federal Credit Union ("Dresser"). Following a non-evidentiary hearing on the matter, the parties agreed to and have submitted briefs on the validity and effect of a future advance or cross collateralization clause that granted Dresser a security interest in the Debtors' car to secure future loans. Having considered this matter, the Court hereby FINDS and CONCLUDES:

### BACKGROUND

Dresser filed a Motion for Relief from Stay, seeking to pursue its right to foreclose on the Debtors' 1999 Chevrolet Malibu. When the Debtors failed to oppose the Motion by the deadline, the Court granted relief from stay. The Debtors filed a motion to reconsider, arguing that they were not in default of the note, dated July 30, 2002 (the "First Note"), which was secured by their 1999 Chevrolet Malibu, and had in fact tendered the final payment. Dresser admits these assertions, but contends that it is entitled to relief because the 1999 Chevrolet Malibu also

served as collateral for a second note, dated December, 2002 (the "Second Note"). The Debtors used the proceeds of the Second Note to purchase a Chevy Trailblazer. When they were unable to make payments on the Second Note, Dresser repossessed the Chevy Trailblazer. Unfortunately, the sale of the Trailblazer resulted in a deficiency of $8,876.97 on the Second Note. Dresser claims that, under the provisions of the security agreement for the First Note, the 1999 Chevrolet Malibu secures this deficiency balance as well.

Both the First Note and the Second Note are based on identical pre-printed forms titled "Note and Disclosure Statement." The forms provide that the loan transactions are "subject to Louisiana law." The security agreements appearing on the reverse side of the form contain the following cross-collateral or future advance provision:

> WHAT THE SECURITY INTEREST COVERS—The security interest secures the loan described in the Truth in Lending Disclosure and any extensions, renewals or refinancings of that loan. *It also secures any other loans you have with the credit union now or in the future and any other amounts you owe the credit union for any reason now or in the future.* If the property description is marked with one star (*), or the property is household goods as defined by the Credit Practice Rule, the property will secure only this loan and not other amounts you owe.

(emphasis added). Thus, by the express terms of the security agreement executed in connection with the First Note, the 1999 Chevy Malibu also secured the Debtors'

obligations to Dresser under the Second Note.

The Debtors have raised three defenses to the "future advance" or "cross-collateralization" clause. First, they assert that such clauses are invalid under Louisiana law. Second, they contend that automobiles are "household goods," as defined by the Credit Practice Rule, expressly excluded by the terms of the security agreement. Finally, the Debtors argue that Dresser violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, as implemented by Regulation Z, 12 C.F.R., Part 226, by failing to adequately disclose the nature of the security interest given in connection with the First Note. The Debtors claim that they were unaware of the future advance clause and would not have made either of the loans with Dresser if they had been aware of it.

## VALIDITY OF FUTURE ADVANCE CLAUSE

The effectiveness of future advance clauses in Louisiana is governed by Article 9 of the Uniform Commercial Code, La. Rev.Stat. § 10:9–101, *et seq.*, which became effective in Louisiana on July 1, 2001. Section 9–204(c) of the Louisiana UCC specifically authorizes future advance clauses, as follows:

> A security agreement may provide that collateral secures . . . future advances or other value, whether or not the advances or value are given pursuant to commitment.

La.Rev.Stat. § 10:9–204(c).

Courts applying this section of the UCC have consistently held that the validity of a future advance clause is a question of the parties' intent.[1] The Louisiana Official

---

1. Some courts had attempted to determine the parties' intent in connection with future advance clauses by considering whether the future loan was of the "same class" as the primary obligation and so "related" to the primary obligation that the consent of the debtor to the inclusion of the later loan could be inferred. *See, e.g., Blair v. Memphis Bank*

Comment to this section also reflects this view. It states that:

> Subsection (c) changes the language of former Chapter 9 to state more clearly that the parties may by agreement provide that collateral secures future advances as well as past or present advances. This rule is consistent with Civil Code Article 3298 (mortgage may secure future obligations). The parties are free to agree that a security interest secures any lawful obligation whatsoever.... The matter is one of contract, not law. For future advances to be covered, the obligations secured by the collateral must be within the intent of the parties' agreement. Determining the obligations secured by collateral is solely a matter of construing the parties' contract by applying normal principles of contract interpretation. See Civil Code Arts. 2045–2057.

La.Rev.Stat. § 10:9–204(c) & cmt. (citation omitted).

■ Louisiana Civil Code Article 2046, and cases decided thereunder, provide that courts are bound to give legal effect to all contracts and their terms according to the true intent of the parties, as determined by the words of the contract, when the words are clear and explicit and lead to no absurd consequences. *See Commercial Life Ins. Co. v. Robinson*, 662 So.2d 486

(La.App.1995). When a contract is unambiguous, the court lacks authority to look beyond the four corners of the document and consider extrinsic evidence. *Taita Chemical Co. Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377 (5th Cir.2001) (applying Louisiana law).

While the Court could find no reported decisions applying the Louisiana UCC to future advance clauses, courts from other jurisdictions, which have been decided after the UCC was revised in 2001, enforce future advance clauses as long as they are clear and unambiguous. In *In re Watson*, 286 B.R. 594 (Bankr.D.N.J.2002), the court enforced a future advance clause under similar circumstances, where a credit union had made unsecured loans to a debtor, followed by a secured loan to purchase a car, which was followed by two additional unsecured loans. The loan documentation for the car loan stated that the car secured the "advances you have now or receive in the future ..., any other loans you have with the credit union, ... and any other amounts you owe the credit union for any reason now or in the future...." Applying the revised UCC section 9–204(c), the court granted relief from stay to repossess the car, even though the debtor was not in default on the car loan, but only on the unsecured loans.[2]

---

& Trust Co. *(In re Blair)*, 26 B.R. 228 (Bankr. W.D.Tenn.1982) (the "same class/relatedness" test was met where both debts were personal loans secured by motor vehicles held for personal use, but not where the subsequent debt was a guarantee of a business obligation). Section 9–204 of the UCC was revised in 2001, in part as a reaction to such cases, and to clarify that the "same class" and other similar tests were disfavored. The revised Official Comment to section 9–204 states that, "[t]his Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance ... was of the same or a similar type or class as earlier advances and obligations secured

by the collateral." Louisiana has adopted this version of the Official Comment as well as the Louisiana comment cited above.

2. *See also Pride Hyundai, Inc. v. Chrysler Financial Co., LLC*, 369 F.3d 603 (1st Cir.2004) (predicting that Massachusetts state court would apply comment to revised UCC and interpret future advance or "dragnet" clause in security agreement according to its unambiguous terms, even if party's subjective intent was not to secure future debts with collateral, and would not consider whether subsequent obligation was of same type or class.)

Based upon the Louisiana UCC section cited above, the official comment thereto, and the provisions of Louisiana law on contract interpretation, the Court believes the future advance clause in this case is clear and unambiguous and should be enforced according to its terms. Therefore, the Court finds that the future advance clause was effective under Louisiana law to grant Dresser a security interest in the 1999 Chevrolet Malibu to secure both the First and Second Notes.

## EXCEPTION FOR HOUSEHOLD GOODS

The Debtors also argue that the 1999 Chevrolet Malibu is a "household good" and thus excluded from the future advance clause by its express terms. Household goods are defined in the Credit Practice Rule as "clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents." 16 C.F.R. § 444.1. Vehicles are not included. The Debtors have argued that the car is a "personal effect," but that definition has been narrowly construed and limited to items that an individual would ordinarily carry about on his or her person and possessions of uniquely personal nature, *not* motor vehicles. *See Fassinger v. Allegheny–Ludlum Brackenridge Fed. Credit Union (In re Fassinger)*, 246 B.R. 513, 517 n. 4 (Bankr.W.D.Pa.2000).

## VIOLATION OF TILA

Finally, the Debtors assert that the security interest in the First Note should not be enforced because Dresser's disclosure of it was insufficient under the TILA and Reg. Z. We need not determine, however, whether the future advance clause in this case violated TILA. A TILA violation does not render the underlying obligation unenforceable. *Charter Fin. Co. v. Henderson*, 60 Ill.2d 323, 326 N.E.2d 372 (1975). Damages for a TILA violation may be used to set-off or recoup against the offending creditor's claim against the debtor. 15 U.S.C. § 1640(e).

More importantly, in a Chapter 7 case, the debtor does not have standing to assert a TILA claim. A debtor's claim for violation of the TILA becomes "property of the estate" under 11 U.S.C. § 541(a) upon the filing of a bankruptcy petition. *In re Boganski*, 322 B.R. 422 (9th Cir. BAP 2005). The Chapter 7 trustee becomes the proper party to bring a cause of action against the lender for such a violation. *Id.* Absent abandonment of the claim or other unusual circumstances, a TILA claim may not be used by a debtor to defend a motion for relief from stay because the claim is owned by the estate. *See First Nat'l Bank v. Rose (In re Rose)*, 17 B.R. 55 (Bankr.W.D.Ark.1981).

## CONCLUSION

For these reasons, the Debtors have failed to raise sufficient grounds on which the Court could invalidate Dresser's future advance clause. The Court must interpret the security agreement according to its express terms. Therefore, the 1999 Chevrolet Malibu also secures the deficiency balance of $8,876.97 on the Second Note, and Dresser has demonstrated grounds for relief from the automatic stay to exercise its rights against this car. Accordingly, the Court hereby

ORDERS that the Debtors' Motion to Reconsider is DENIED. The Order granting Dresser relief from the automatic stay shall remain in effect.